728 A.2d 253 (1999)
321 N.J. Super. 46
Camille[1] CAPACCIO, Plaintiff-Respondent,
v.
Anthony CAPACCIO, Defendant-Appellant.
Tina Baldassarre,[2] Plaintiff-Respondent,
v.
Anthony Capaccio, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted March 30, 1999.
Decided April 23, 1999.
*254 Gaccione, Pomaco & Beck, Belleville, for defendant-appellant (Steven J. Martino, of counsel and on the brief).
Camille Capaccio, plaintiff-respondent pro se.
Plaintiff-respondent Tina Baldassarre relied on plaintiff-respondent Camille Capaccio's brief.
Before Judges BROCHIN, KLEINER, and STEINBERG.
The opinion of the court was delivered by KLEINER, J.A.D.
This is an appeal from a Family Part order dated February 11, 1998, resolving two separate motions filed by defendant Anthony Capaccio, both seeking to modify two separate child support orders. Defendant's motions relied upon a claim of change of circumstances arising from a hearing on April 17, 1997, by the Social Security Administration during which the Administrative Law Judge determined that defendant was disabled as of July 30, 1995, and continuing through December 31, 1997, thus entitling defendant to disability insurance benefits and supplemental security income under the Social Security Act.[3] Because the underlying claim of change of circumstances was the same in each of defendant's motions to modify the child support orders, Judge Edward Schwartz consolidated the two separate applications for disposition on the same date. One order bearing the consolidated caption *255 was initially issued on December 24, 1997, and upon reconsideration[4] was modified by a second order, again under the consolidated docket number, dated February 11, 1997.

I
Defendant, age thirty-two, is the father of four children: Anthony Capaccio IV, born December 1, 1985 and Michael Capaccio, born September 9, 1988, whose mother is Camille Capaccio; Tara Baldassarre, born May 29, 1985, whose mother is Tina Baldassarre; and Nikki Ann Franciose, born June 3, 1993, whose mother was Gina Franciose, now deceased.
Anthony and Michael reside with their mother, plaintiff Camille Capaccio ("Camille"). Pursuant to a judgment of divorce dated May 13, 1991, Camille is the sole custodial parent of both children. The initial divorce judgment established defendant's child support responsibility at $135 per week for the two children, which was reduced in 1995 to $110 per week, and required defendant to maintain a life insurance policy obtained during the marriage naming the two children as beneficiaries. Michael was diagnosed with Hodgkins' disease in July 1997. As of the date of defendant's initial modification motion, Michael's accrued medical bills were substantial. It was undisputed that Michael's future medical expenses will continue and it was anticipated that those expenses will also be substantial.
Tara Baldassarre resides with her mother, plaintiff Tina Baldassarre ("Tina"). Pursuant to an initial child support order dated September 2, 1992, defendant was ordered to pay $50 per week plus additional child care expenses for Tara. Defendant was originally ordered to pay fifty percent of Tara's unreimbursed medical expenses.
Nikki Ann Franciose resides with her maternal grandmother, Rosemary Franciose. Subsequent to the death of Nikki's mother, Gina Franciose, on November 7, 1996, defendant surrendered custody to Rosemary Franciose. Defendant has never been ordered to pay child support for Nikki. Rosemary Franciose signed a certification verifying that she was not presently seeking child support from defendant.[5]
On December 24, 1997, Judge Schwartz entered an order, in pertinent part: directing defendant to pay a reduced amount in child support to each plaintiff; garnishing defendant's social security disability payment to satisfy the child support obligations; requiring defendant to prove the continuing existence and parameters of his disability to the court; directing defendant to pay half of Camille's unreimbursed medical bills for their son; and directing defendant to hold in escrow any monies realized in a then-pending personal injury litigation and to notify the court in the event defendant abandons said litigation.[6]
On January 9, 1998, defendant filed a motion for reconsideration of the December 24, 1997 order. Thereafter, Judge Schwartz heard oral argument and entered an order dated February 11, 1998, in pertinent part: directing defendant to pay a further reduced amount in child support; garnishing defendant's social security disability check; requiring *256 defendant's doctor to submit a report to the court regarding the status and parameters of defendant's disability; directing defendant to pay for twenty-five percent of Tina's unreimbursed medical expenses for Tara; ordering defendant to name Anthony IV, Michael, and Tara as partial beneficiaries on one existing life insurance policy;[7] and continuing the terms of the December 24, 1997 order except where modified by the February 11, 1998 order.
In defendant's brief on appeal,[8] he raises five points:
POINT I
THE APPELLATE COURT HAS THE AUTHORITY TO DISTURB THE FINDINGS OF THE TRIAL COURT UPON THEIR REVIEW.
POINT II
DEFENDANT'S CHILD SUPPORT OBLIGATION IMPOSED BY THE ORDER IS UNREASONABLE, INAPPROPRIATE AND BASED UPON AN ERRONEOUS APPLICATION OF EXISTING LEGAL PRINCIPLES.
A. JUDGE SCHWARTZ FAILED TO APPLY THE CHILD SUPPORT GUIDELINES AS REQUIRED BY LAW.
B. JUDGE SCHWARTZ FAILED TO APPLY THE GOVERNMENTAL BENEFIT DEDUCTION FOR SOCIAL SECURITY DISABILITY PAID DIRECTLY TO DEFENDANT'S CHILDREN.
C. JUDGE SCHWARTZ ERRONEOUSLY CALCULATED DEFENDANT'S OBLIGATIONS REGARDING HIS CHILDREN'S UNPAID MEDICAL EXPENSES.
POINT III
JUDGE SCHWARTZ'S ORDER REQUIRING DEFENDANT TO REPROVE HIS DISABILITY SHOULD BE REMANDED BASED UPON HIS ERRONEOUS APPLICATION OF EXISTING LAW.
POINT IV
JUDGE SCHWARTZ IMPROPERLY ORDERED THAT ANY MONETARY GAIN FROM DEFENDANT'S PENDING TORT ACTION BE HELD IN TRUST FOR PURPOSES OF CHILD SUPPORT AND IMPROPERLY DENIED DEFENDANT HIS LEGAL RIGHTS REQUIRING THE SAME.
POINT V
THE COURT'S ORDER REQUIRING THE DEFENDANT TO NAME HIS CHILDREN AS BENEFICIARIES IS ERRONEOUS IN THAT THE SAME IS MAINTAINED BY HIS PARENTS.

II
We first address defendant's contention that the motion judge failed to apply the Child Support Guidelines ("Guidelines"). Pressler, Current N.J. Court Rules, R. 5:6A Appendix IX (1998) [hereinafter Appendix IX]. The 1998 Guidelines "provide the court with economic information to assist in the establishment and modification of fair and adequate child support awards." A child support order following the Guidelines "is assumed to be the correct amount of child support unless a party proves to the court that circumstances exist that make a guidelines-based award inappropriate in a specific case." Appendix IX-A(2). The court may disregard the Guidelines or adjust a Guidelines-based award:

*257 if a party shows, and the court finds, that such action is appropriate due to conflict with one of the factors set forth in sections 4, 7, 10, 13, 14, 15, or 20 of Appendix IX-A, or due to the fact that an injustice would result due to the application of the guidelines in a specific case. The determination of whether good cause exists to disregard or adjust a guidelines-based award in a particular case shall be decided by the court.

[Ibid.]
The Guidelines require:
If the support guidelines are not applied in a specific case or the guidelines-based award is adjusted, the reason for the deviation and the amount of the guidelines-based award (before any adjustment) must be specified in writing on the guidelines worksheet or in the support order. Such findings clarify the basis for the support order if appealed or modified in the future. If the guidelines are found to be inapplicable in a particular case, the court should consider the factors set forth in N.J.S.A. 2A:34-23[9] or N.J.S.A. 9:17-53[10] when establishing the child support award.

[Appendix IX-A(3).]
In section twenty-one, the Guidelines state: "In all cases, the decision to deviate from the guidelines shall be based on the best interests of the child. All deviations from the guidelines-based award and the amount of the guidelines-based award must be stated in writing in the support order or on the guidelines worksheet." Appendix IX-A(21).
The 1998 Guidelines must be construed with Rule 5:6A which provides:
The guidelines set forth in Appendix IX of these Rules shall be applied when an application to establish or modify child support is considered by the court. The guidelines may be modified or disregarded by the court only where good cause is shown. Good cause shall consist of a) the considerations set forth in Appendix IX-A, or the presence of other relevant factors which may make the guidelines inapplicable or subject to modification, and b) the fact that injustice would result from the application of the guidelines. In all cases, the determination of good cause shall be within the sound discretion of the court.
A completed child support guidelines worksheet in the form prescribed in Appendix IX of these Rules shall be filed with any order or judgment that includes child support that is submitted for the approval of the court. If a proposed child support award differs from the award calculated under the child support guidelines, the worksheet shall state the reason for the deviation and the amount of the award calculated under the child support guidelines.[11]
*258 In reviewing the record on appeal, it is quite apparent that defendant's contentions in Points IIA and IIB that the judge failed to apply the Guidelines and failed to apply the government benefit deduction for social security disability paid directly to defendant's three children are clearly without merit. See R. 2:11-3(e)(1)(E).
It is abundantly clear that the judge fully considered the gross and net income and assets of each party, the case information statement filed by each party, and the sole parenting worksheets which had been filed with the court. The judge was fully aware of each parent's standard of living and was particularly mindful that, despite the expenses listed in defendant's case information statement, defendant was living with his parents and was fully subsidized by them. The judge explained why it was appropriate to deviate from the Guidelines even though "this amount will place [defendant's] available income under the poverty guidelines."
We need not fully repeat all of the judge's calculations. It is clear that at the reconsideration hearing the judge utilized the sole parenting worksheets and determined that the appropriate child support obligation would be $37 per week for Camille's children and $17 per week for Tina's child. The judge then noted that if he applied the poverty guideline,[12] which at that time was $160 per week, "there would be no obligation on the part of [defendant] for the support of any of his children, and I think that would be contrary to the best interests of these children, and would have failed to take into account that [defendant] has no rental[13] expense at all."
An obligor's living expenses are an appropriate consideration in fashioning a child support award. The Guidelines provide several examples of where the obligor parent's living expenses are considered: in Appendix IX-A(3), the Guidelines-based award may be adjusted "to accommodate ... the parents' circumstances"; in Appendix IX-A(20), in an extreme income situation, "the court shall carefully review the obligor's income and living expenses to determine the maximum amount of child support than can reasonably be ordered without denying the obligor the means of self-support at a minimum subsistence level"; and in the instructions for the sole parenting worksheet in Appendix IX-B, the instructions for lines 24 to 26, "Maintaining a Self-Support Reserve," the court can "consider a parent's actual living expenses" in its determination of whether the application of the self-support reserve is appropriate. When the Guidelines are inapplicable and the court applies the statutory criteria listed in N.J.S.A. 2A:34-23, the court may consider the "economic circumstances *259 of each parent." Lastly, the reasons for the deviation must be in writing pursuant to Appendix IX-A(2) and (21), as well as R. 5:6A.[14]
Based upon the totality of the evidence presented, the judge determined that he would disregard the poverty guideline and that he was prepared to follow the calculated Guideline figures of $37 per week payable to Camille for two children and $17 per week payable to Tina for one child. The judge then modified those figures so that each child would be treated equally, such that Camille would receive $36 per week for two children and Tara would receive $18 per week for one child. The court fully recognized that Camille's children received $128 per month[15] and Tara's child received $64 per month from the Social Security Administration.
Here, the judge fully explained why he was deviating from the Guidelines and fully explained that his deviation also encompassed a deviation from strict adherence to the self-support reserve of $160 per week. The judge's explanation fulfills the judicial responsibility articulated in Winterberg v. Lupo, 300 N.J.Super. 125, 132, 692 A.2d 92 (App.Div.1997). Further appellate intervention is unwarranted.

III
Defendant contends in Point IIC and IV that the judge erroneously determined defendant's obligations regarding his children's unreimbursed medical expenses. The 1998 Guidelines presume that the custodial parent will pay the first $250 of each child's medical expenses per year, but will share these ordinary health care expenses proportionally to the relative incomes of the parents. Thus, the medical expenses for the first $250 per child per year are included in the Appendix IX-F schedules. However, any amount of unreimbursed medical expenses above $250 that are predictable and recurring are included in the sole parenting worksheet in Line 10 and added to the basic support amount, as explained in Appendix IX-B in the instructions for the sole parenting worksheet. Unpredictable and non-recurring medical expenses in excess of $250 per child per year are not included in the support award; thus, "the procedure for sharing such costs should be set forth in the general language of the order or judgment." Appendix IX-B.
The judge was fully aware that the medical expenses for Michael were substantial, exceeding $50,000, and would be on-going. Although the judge recognized that defendant had been previously ordered to pay fifty percent of Michael's unreimbursed medical expenses, he was also aware of two additional facts: Camille's family had conducted a public fund raiser to obtain charitable contributions to assist her in defraying the expenses of Michael's medical treatment and that fund raiser had raised in excess of $50,000, albeit, as of the date of defendant's motion for reconsideration, the exact extent of the fund raising effort was unknown. The judge determined that defendant's actual obligation would be affected by deducting those donated funds from the expenses owed. The judge temporarily suspended defendant's obligation to reimburse fifty percent of Michael's medical bills. However, to assure that funds would be available, the judge ordered that defendant's then-pending personal injury litigation could not be dismissed by defendant without Family Part approval and additionally ordered that any settlement of that litigation would be deposited in escrow pending further review in the Family Part. The judge's decision was entirely equitable and clearly was neither arbitrary nor capricious. In fact, the judge's decision is consistent with Cleveland v. Cleveland, 249 N.J.Super. 96, 592 A.2d 20 (App.Div.1991) (holding, in part, a personal injury award to a former spouse may be considered income in determining *260 child support) and is consistent with the Guidelines, Appendix IX-B, which defines taxable and non-taxable income to be included on a sole parenting worksheet or on a shared parenting worksheet.

IV
Defendant contends in Point III the judge erred by requiring defendant to provide medical proof that his disability is continuing. We disagree. The judge's order is consistent with the Social Security Administration disability benefit award which also requires defendant to provide medical proof that his disability is continuous. See 42 U.S.C. § 421(i)(1) (requiring reevaluation "[i]n any case where an individual is or has been determined to be under a disability, ... at least once every three years.").[16]

V
In Point V defendant contends that the judge erred when he required plaintiff to name his children as beneficiaries on his life insurance and to pay insurance premiums. We disagree. Courts have statutory authority to require the maintenance of insurance coverage. N.J.S.A. 2A:34-23d, effective January 19, 1998, provides that after filing a complaint for divorce, where the support of a child is at issue, the parent who maintained existing life insurance coverage must continue to maintain that same coverage. Additionally, the court may reallocate financial responsibilities by ordering a parent to obtain comparable insurance or may release a party from the obligation to maintain insurance.
Here, the judge was advised that defendant had applied under the terms of the existing insurance policy for a waiver of premiums due to his disability. Ordering defendant to maintain the existing policy will not pose an economic detriment to defendant. Moreover, should defendant's application for a waiver of insurance premiums be denied, defendant is free to present that evidence to the Family Part for appropriate reconsideration of the life insurance provisions of the present order.
Affirmed.
NOTES
[1] Defendant mistakenly spelled Ms. Capaccio's name as "Camile" on the brief.
[2] Defendant also incorrectly spelled Ms. Baldassarre's name with one "r" on the brief.
[3] Defendant's application for disability was considered pursuant to 20 C.F.R. 404.1520(a)-(f) and 416.920(a)-(f) by Administrative Law Judge ("ALJ") Robert Lazarus.

The ALJ determined that defendant had not been gainfully employed since the onset of his disability on July 30, 1995, and that defendant had been previously employed in sundry positions as a store clerk, automobile detailer, and as a laborer. The ALJ found that defendant's disability was attributable to "poly-substance abuse disorder, chronic renal failure, gout, clinical obesity, dilated cardiomyopathy, hyperparathyroidism, congestive heart failure, and back pain," and that defendant's substance abuse was not material to the conclusion that defendant was disabled within the parameters of the Social Security Act.
[4] Defendant was initially awarded $570 per month for social security benefits. That sum was reduced to $538 per month in January 1998. The reduction in defendant's monthly disability benefits was one basis for defendant's motion for reconsideration of the order entered December 24, 1997. Additionally, as of the date of the initial modification motion Camille Capaccio was unemployed. In defendant's motion for reconsideration, he correctly asserted that Camille had obtained employment, providing another basis for reconsideration.
[5] Judge Schwartz premised each decision in these consolidated matters upon the understanding that defendant's child support obligation was for three children. Implicit in the judge's decisions is the fact that the last order dated February 11, 1998, would be subject to modification in the event Rosemary Franciose were to apply for child support for her granddaughter, Nikki.
[6] Although the record on appeal is not entirely clear, it appears that defendant was involved in two accidents. One personal injury claim had been settled shortly before the return date of the initial modification hearing. Defendant paid the net settlement he received to Camille in partial reduction of his accrued child support obligation. The second claim was pending pursuant to a prior complaint filed in the Law Division. The provision in the December 24, 1997 order references that pending litigation.
[7] After Camille and defendant were divorced, defendant had been ordered to obtain an additional life insurance policy for $100,000 naming his two sons as beneficiaries conditioned upon defendant's insurability. Defendant did obtain one policy of insurance providing $50,000 of coverage. Defendant claimed that his uninsurability prevented him from obtaining the additional insurance to meet the obligation established by the order.
[8] Defendant's notice of appeal set forth three specific issues relating to the order of February 11, 1998. Defendant's brief on appeal raises issues not referenced in his notice of appeal. Since all issues raised by defendant's brief were presented to the motion judge and have been fully briefed on appeal, we have elected pursuant to R. 2:6-2 to address each of defendant's contentions, including certain aspects of the order which arguably are interlocutory in nature. See Pressler, Current N.J. Court Rules, comment on R. 2:6-2 (1999).
[9] N.J.S.A. 2A:34-23(a), effective January 8, 1998, provides:

In determining the amount to be paid by a parent for support of the child and the period during which the duty of support is owed, the court in those cases not governed by court rule shall consider, but not be limited to, the following factors:
(1) Needs of the child;
(2) Standard of living and economic circumstances of each parent;
(3) All sources of income and assets of each parent;
(4) Earning ability of each parent, including educational background, training, employment skills, work experience, custodial responsibility for children including the cost of providing child care and the length of time and cost of each parent to obtain training or experience for appropriate employment;
(5) Need and capacity of the child for education, including higher education;
(6) Age and health of the child and each parent;
(7) Income, assets and earning ability of the child;
(8) Responsibility of the parents for the court-ordered support of others;
(9) Reasonable debts and liabilities of each child and parent; and
(10) Any other factors the court may deem relevant.
[10] N.J.S.A. 9:17-53 contains a list of considerations for child support that is virtually identical to that found in N.J.S.A. 2A:34-23.
[11] Although a Guidelines worksheet may not have been filed with the order dated February 11, 1998, and was not provided separately as an exhibit in defendant's appendices, we are nonetheless able to consider the issues raised by defendant. The motion judge's oral findings of fact as supplemented by his written opinion provide a full and complete explanation of his ultimate conclusion. Our willingness to consider this appeal on its merits without a worksheet required by R. 5:6A shall not be construed as any indication that we will in future appeals countenance other than a strict adherence to R. 5:6A.
[12] Section seven, "Assumptions Included in the Child Support Guidelines" lists eleven assumptions on which the Guidelines are based, one of which is the self-support reserve. The self-support reserve is weekly income an impoverished parent may maintain for him/herself for basic sustenance. "It attempts to ensure that the obligor has sufficient income to maintain a basic subsistence level and the incentive to work so that child support can be paid." Appendix IX-A(7).

A child support order may be adjusted to reflect the self-support reserve "only if [the child support] payment would reduce the obligor's net income below the reserve and the custodial parent's... net income is greater than 105% of the poverty guideline." Appendix IX-A(7). As of March 10, 1997, the self-support reserve was $160 per week. Thus, the Guidelines assume that the obligor parent will be left with an income that provides for the parent's basis subsistence.
Section twenty, "Extreme Parental Income Situations," provides that extremely low or extremely high parental incomes makes the Appendix IX-F award (the chart on which the calculated child support is based) "inappropriate due to the limitations of the economic data." This section provides that if the obligor's net income after deducting child support obligation, is less than $160 per week, "the court shall carefully review the obligor's income and living expenses to determine the maximum amount of child support that can reasonably be ordered without denying the obligor the means of self-support at a minimum subsistence level." Appendix IX-A(20).
[13] In another section of the judge's findings, he concluded that defendant "has few living expenses because he resides with his parents who provide his basic needs. Therefore, an upward deviation from the Child Support Guidelines is warranted."
[14] Although the judge's reasons for deviation are fully explained in his oral and written opinion, we construe Appendix IX-A(2) and (21) and R. 5:6A to require that the judge's reasons for deviation be attached to the order upon filing.
[15] In his oral opinion, the judge stated Camille's two children received $128 per month for social security disability. The actual amount, according to records from the Social Security Administration included in defendant's appendix is $126 per month, $63 per month for each of Camille's two children.
[16] The judge's order is also consistent with the evidence presented. Defendant admitted that he has supplemented his income by collecting and selling scrap metal. Defendant also sustained personal injuries in an accident while operating a taxi cab. Evidence was also presented which clearly demonstrated that although defendant is disabled within the purview of the Social Security Act, defendant is not sedentary nor is he confined to his home. Periodic review of defendant's medical status will permit the Family Part to reevaluate defendant's actual ability to return to the work force.