745 A.2d 592 (2000)
328 N.J. Super. 275
Doreen SCHWARZ, Plaintiff/Respondent,
v.
John SCHWARZ, Defendant/Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted December 14, 1999.
Decided February 18, 2000.
*593 Karen I. Maier, Rochelle Park, for defendant/appellant.
Mink & Meislik, West Orange, for plaintiff/respondent (Karen Meislik, on the brief).
Before Judges WALLACE, Jr., LESEMANN and BILDER.
The opinion of the court was delivered by WALLACE, Jr., J.A.D.
This appeal arises out of the Family Part's post-judgment order modifying defendant's child support obligation, but denying his request to alter the beneficiary designation on his life insurance policy to include his new wife and daughter. On appeal, defendant argues the trial judge erred: (1) in calculating his modified child support under the guidelines, and (2) in denying his application to amend the beneficiary designation on his life insurance policy to include his wife and daughter from his subsequent marriage. Further, defendant claims these errors were of constitutional dimension. We reverse and remand for reconsideration.

I
Plaintiff is a forty-three year old teacher and defendant is a forty-eight year old employed by a public school board. The parties were married on February 14, 1981. One child, Richard, was born of the marriage on March 31, 1986. A final judgment of divorce was entered on August 10, 1992. The judgment incorporated the parties' partial property settlement agreement, which resolved equitable distribution and counsel fees. The remaining issues, including child support, custody, and life insurance, were resolved at trial. The parties were awarded joint legal custody of Richard, with plaintiff having primary residential custody. Based upon the parties' combined income of $77,985 ($21,092 for plaintiff and $56,893 for defendant), plaintiff was awarded child support of $180 per week. Each party was entitled to claim *594 Richard as a tax deduction in alternate years. The final judgment also provided that defendant
shall maintain his current life insurance policy through his employment which equals 3 ½ times his salary, naming [plaintiff], as Trustee Beneficiary for the benefit of the Child. If [defendant] terminates his current employment, he shall obtain a term policy of equal value.
In November of 1997, defendant married Karen I. Maier, an attorney who is representing him in this appeal. They have one child, Imogene, born on March 30, 1998.
On May 28, 1998, defendant filed a motion seeking a reduction in his child support obligation based upon changed circumstances and a modification of the final judgment of divorce amending the beneficiary designation on his life insurance policy to include his new wife and child. In support of that motion, defendant submitted his joint 1997 federal income tax return where he claimed $86,733 in joint adjusted gross income, $5,024 in Maier's business losses, and a $3,954 tax refund.
In further support of the motion, defendant submitted a "Child Support GuidelinesShared Parenting Worksheet" (Shared Parenting Worksheet) in accordance with R. 5:6A (Child Support Guidelines) and Pressler, Current N.J. Court Rules, Appendix IX-D (2000). Defendant listed on line 1 joint weekly gross taxable income of $1,346.15 for plaintiff and $1,587.83 for himself. He subtracted mandatory weekly retirement contributions of $63.13 for plaintiff and $70.55 for himself. He also subtracted from his gross income a $211.11 weekly other-dependent deduction which he calculated on a separate Child Support GuidelinesSole Parenting Worksheet. He listed Maier's weekly gross income as $80.12. Defendant also considered that Richard spent 57% of his overnights with plaintiff and 43% with him, to compute an adjusted weekly child support payment under the guidelines of $63.99.
Defendant noted in his certification that in compliance with the final judgment of divorce, he had maintained a life insurance policy through his employer which, upon his death would pay three and a half times his salary, or approximately $245,000, for Richard's benefit. Defendant claimed the present value of his remaining child support obligation to Richard, including college expenses, totaled approximately $42,000. Thus, he argued the current value of the life insurance policy was nearly six times greater than the amount necessary to secure his support obligation for Richard, and requested authorization to add Imogene and Maier as beneficiaries.
In her responsive certification, plaintiff conceded that based on the increase in the parties' respective incomes defendant had established changed circumstances. However, she alleged defendant's financial resources had increased far greater than hers because defendant had received a $20,000 increase in salary and a six figure bequest from his father's estate. She also argued Maier was underemployed, and therefore, the judge should impute $93,641 annually, or $1,800.80 per week to Maier in calculating the other-dependent deduction. Plaintiff certified she earned $50,497 in 1997, with a weekly gross of $971 and a weekly net of $816. In her case information statement (CIS) plaintiff listed monthly net income of $3,508.80 with expenses of $3,500. Thus, she claimed any reduction in child support would "substantially" affect her ability to maintain Richard's standard of living.
Plaintiff also submitted a Sole Parenting Worksheet. She calculated that defendant's adjusted weekly child support obligation under the guidelines totaled $185.34 per week. However, in making that calculation, plaintiff failed to include an adjustment for defendant's other-dependent deduction or for the percentage of overnights Richard spent with defendant. Plaintiff asserted the final judgment of divorce required defendant to maintain the life insurance policy for Richard's benefit, not to *595 secure child support payments, and thus, the insurance was not subject to modification.
In response, defendant admitted that both of the parties' salaries had increased since the entry of the final judgment of divorce. However, he argued plaintiff's salary had increased by $29,404 or 139%, while his salary had increased by only $25,674 or 45%. Additionally, he submitted a CIS which showed $5,431 in monthly expenses and claimed a monthly deficit of $614. Defendant also submitted an amended Shared Parenting Worksheet, listing plaintiff's gross weekly income for 1997 in the amount of $971,[1] resulting in an adjusted weekly child support obligation of $85.05.
In further support of defendant's motion, Maier certified she earned $80.12 in gross weekly taxable income, the amount used in calculating defendant's other-dependent deduction. She explained that in 1992, she was terminated from her position as a corporate attorney. She remained unemployed for two years despite her best efforts to find employment. In July of 1994, she finally found a part-time position, but that firm disbanded in July of 1995. In September of 1995, she obtained a full-time position with a law firm, but several months later that firm also disbanded. Finally, in January of 1997, Maier established a solo law practice, where she remained at the time of the motion.
Oral argument on the motion was held on June 26, 1998. The argument was primarily focused on Maier's alleged underemployment for purposes of determining defendant's other-dependent deduction. The trial judge found defendant established a prima facie case of changed circumstances and scheduled a plenary hearing. However, he stated that enough information had been presented to determine that plaintiff earned $1,038 gross a week ($54,000 ÷ 52) and defendant earned $1,588 gross a week ($82,576 ÷ 52). The judge concluded he would impute income in the amount of $14,000 per year to Maier. The judge applied the "SupportCalcac®" software program, which was developed to assist judges in calculating child support according to the guidelines, to estimate that defendant would be entitled to a $196 per week other-dependent deduction and would owe $67 per week in adjusted child support payments.
However, the judge did not reduce defendant's child support obligation based upon these preliminary calculations because he had ordered a plenary hearing. The judge permitted limited discovery by both parties and set a return date for the plenary hearing.
On November 2, 1998, plaintiff filed a motion seeking to remove Maier as counsel for defendant because Maier was a fact witness in the case. This motion was denied by order dated December 4, 1998.
On that same date, the parties agreed to conclude discovery and allow the trial judge to decide the child support and life insurance issues on the basis of the record. Meanwhile, defendant submitted an updated Shared Parenting Worksheet in which he included an additional $2,000 per year in tax-sheltered investments as part of plaintiff's gross income. Defendant calculated his weekly child support obligation to be $77.78.
On February 8, 1999, the trial judge entered an order reducing defendant's child support obligation to $111 per week in accordance with the child support guidelines, and attached the Shared Parenting Worksheet to the order. In addition, the judge denied defendant's request to modify the beneficiary designation on his life insurance policy because he found that defendant failed to show changed circumstances *596 or that such agreement was inequitable. This appeal followed.

II
Defendant contends the trial judge erred in computing his modified child support. Unfortunately, the judge made no findings of fact or legal conclusions as required by R. 1:6-2(f). The judge attached a Shared Parenting Worksheet to the order, but failed to explain how he calculated child support.
We have frequently noted that an articulation of reasons is essential to the fair resolution of a case. A judge has a duty to make findings of fact and conclusions of law "on every motion decided by written orders that are appealable as of right." R. 1:7-4(a). Failure to perform this duty "`constitutes a disservice to the litigants, the attorneys and the appellate court.'" Curtis v. Finneran, 83 N.J. 563, 569-70, 417 A.2d 15 (1980) (quoting Kenwood Assocs. v. Board of Adjustment of Englewood, 141 N.J.Super. 1, 4, 357 A.2d 55 (App.Div.1976)). Moreover, "naked conclusions do not satisfy the purpose of R. 1:7-4." Id. at 570, 417 A.2d 15.
It is undisputed that defendant met his burden of making a prima facie showing of changed circumstances. Lepis v. Lepis, 83 N.J. 139, 157-59, 416 A.2d 45 (1980). See Miller v. Miller, 160 N.J. 408, 420, 734 A.2d 752 (1999) ("[C]hanged circumstances such as child maturation, increases in need, employment, or child emancipation may result in a modification of support"). In determining whether changed circumstances justifies modification of a party's child support obligation, the judge must apply the child support guidelines as set forth in R. 5:6A. The guidelines must be used as a rebuttable presumption to establish and modify all child support orders. Pressler, supra, Current N.J. Court Rules, comment on Appendix IX-A, ¶ 2 at p.2079.
The judge may disregard the guidelines or adjust a guidelines-based award
if a party shows, and the court finds, that such action is appropriate due to conflict with one of the factors set forth in sections 4, 7, 10, 13, 14, 15, or 20 of Appendix IX-A, or due to the fact that an injustice would result due to the application of the guidelines in a specific case.

[Ibid.]
"The determination of whether good cause exists to disregard or adjust a guidelines-based award in a particular case shall be decided by the court." Ibid.; Capaccio v. Capaccio, 321 N.J.Super. 46, 52, 728 A.2d 253 (App.Div.1999); Hudson v. Hudson, 315 N.J.Super. 577, 583, 719 A.2d 211 (App.Div.1998). "[T]he reason for the deviation and the amount of the guidelines-based award (before any adjustment) must be specified in writing on the guidelines worksheet or in the support order." Capaccio, supra, 321 N.J.Super. at 53, 728 A.2d 253. The guidelines also "include a mechanism to apportion a parent's income to all of his or her legal dependents regardless of the timing of their birth or family association...." Pressler, supra, Current N.J. Court Rules, comment on Appendix IX-A, ¶ 10 at 2086-87. Thus, if a party has other legal dependents, the basic child support obligation may require an adjustment. Ibid. For example, where a divorced parent remarries and has children, that parent's income should be shared by all children born to that parent. Ibid.
Although we have found no published opinion regarding the application of the other-dependent deduction, Appendix IX-A of the court rules provides that in considering the use of this adjustment, the trial judge should apply the following guidelines:
(1) this adjustment shall be used only if requested by a serial-family parent and the income, if any, of the other *597 parent of the secondary family is provided to the court;
(2)if the other parent in the secondary family is voluntarily unemployed or underemployed, the court shall impute income to that person ... to determine the serial family parent's obligation to the children in the secondary family;
(3) this adjustment may be applied to other dependents born before or after the child for whom support is being determined;
(4) this adjustment may be requested by either or both parents (custodial and/or non-custodial);
(5) the adjustment may be applied when the initial award is entered or during subsequent modifications of the support order.
[Pressler, supra, Current N.J. Court Rules, comment on Appendix IX-A, ¶ 10 at 2087.]
Thus, in calculating the amount of the other-dependent deduction as part of the adjustment, three separate support obligation calculations must be prepared: 1) a theoretical support obligation for the other-dependent in the alternate family; 2) a support obligation that includes the other-dependent deduction; and 3) a support obligation that does not include the other-dependent deduction. Id., comment on Appendix IX-B at 2111.
Here, defendant complied with these requirements. He requested the adjustment, submitted his joint income tax return evidencing Maier's income, and submitted the three separate support obligation calculations. In initially projecting defendant's child support obligation under the guidelines, the trial judge stated he could impute $14,000 annually in income to Maier, and that defendant would be entitled to a $198 other-dependent deduction. That finding, however, was not binding upon the parties as discovery and a plenary hearing were to follow.
Nevertheless, in ultimately determining defendant's child support obligation, the trial judge failed to calculate and apply an other-dependent deduction or to explain why an other-dependent deduction was not applicable. The attachment of the completed child support worksheet to the order did not otherwise abrogate the judge's obligation to make sufficient findings of fact, particularly where defendant was facially entitled to an other-dependent deduction under the guidelines. See Elkin v. Sabo, 310 N.J.Super. 462, 470-71, 708 A.2d 1225 (App.Div.1998) (stating that guideline applications must be based on the evidence and supported by a statement of reasons).
Here, in calculating the amount of the other-dependent deduction, the judge should determine whether Maier is voluntarily underemployed, and if so, then determine how much income to impute to her. Pressler, supra, Current N.J. Court Rules, comment on Appendix IX-A, ¶ 10 at 2086-87. The judge initially denied plaintiff's request to impute $90,000 in annual income to Maier, and stated he would impute $14,000 in income to her. However, following discovery, he made no findings of fact regarding Maier's income. Consequently, a remand is required to determine the amount of income to impute to Maier and to compute the amount of the other-dependent deduction.
Further, it was not disputed that plaintiff invested approximately $65 per week through her employer in a tax deferred annuity. Plaintiff did not include this amount on her Sole Parenting Worksheet where she had represented that she earned $971 in gross taxable income per week. The motion judge accepted this amount without including the amount of the deferred annuity.
The guidelines define gross income as "all earned and unearned income that is recurring or will increase the income available to the recipient over an extended period of time." Pressler, supra, *598 Current N.J. Court Rules, comment on Appendix IX-B at 2103. Voluntary payments to deferred annuity plans and other similar types of deferred compensation plans, unlike mandatory retirement contributions, are optional at the election of the recipient. Thus, these funds should be included in determining a party's adjusted gross taxable income for purposes of calculating child support. Id. at 2108. See e.g., Connell v. Connell, 313 N.J.Super. 426, 433-34, 712 A.2d 1266 (App.Div. 1998) (finding that inherited funds and the capacity to produce income may be used in calculating child support notwithstanding that party placed inheritance in a non-income producing asset). Thus, under the guidelines, plaintiff's voluntary payments to her deferred annuity plans should have been included in her gross taxable income.

III
Defendant argues the trial judge erred in denying his application to amend the beneficiary designation on his life insurance policy to include Maier and Imogene. He also argues the denial of his motion to amend the life insurance policy violated the Equal Protection Clause of the Fourteenth Amendment. We find no need to address the constitutional argument.
In denying defendant's motion, the trial judge found the parties had agreed to the insurance provision in their partial property agreement. He concluded defendant failed to show changed circumstances.
Defendant claims the judge erred in finding the parties entered into an agreement regarding the life insurance policy because the trial judge had ruled that defendant should maintain such a policy. We agree. Although the judge may have misspoken in stating that the parties agreed to this issue, that should not alter the analysis. Both consensual agreements and judicial decrees are subject to the same standard of "changed circumstances." Lepis, supra, 83 N.J. at 148, 416 A.2d 45. Consequently, we find this comment was harmless.
Nevertheless, it does not conclude the discussion. Life insurance policies are frequently included in final judgments of divorce as security for support obligations. Jacobitti v. Jacobitti, 135 N.J. 571, 574-75, 641 A.2d 535 (1994); McCarthy v. McCarthy, 319 N.J.Super. 138, 146, 725 A.2d 32 (App.Div.1999).
Here, defendant alleged changed circumstances based upon the birth of his daughter and because the present value of his life insurance policy exceeded the value of his remaining child support obligations to Richard. Moreover, based on his increase in income, the amount of his life insurance coverage had increased substantially since the time of his divorce. While this is strong evidence of changed circumstances, the trial judge made no findings in concluding that defendant could not alter the beneficiary designation. Consequently, we remand for the judge to make findings of fact and conclusions of law on this issue.
We reverse and remand for further findings of fact and conclusions of law consistent with this opinion.
NOTES
[1] Defendant maintained that plaintiff's salary in 1998, the year the motion was filed, was actually $58,292 or $1,121 per week.