**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4057-17T3

T.G.,[1]

    Plaintiff-Respondent,

v.

C.P.,

    Defendant-Appellant.

_____

Submitted March 25, 2019 – Decided May 17, 2019

Before Judges Messano and Gooden Brown.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FD-02-0181-17.

Jared A. Geist, attorney for appellant.

Landel Bernstein & Kalosieh, LLP, attorneys for respondent (Thomas S. Garlick, on the brief).

---

[1] We use initials to protect the parties' privacy interests. See R. 1:38-3(d)(1).

PER CURIAM

In this non-dissolution matter,[2] defendant (father) appeals from provisions of a May 3, 2018 Family Part order, requiring him to: 1) provide proof of attendance at Alcoholics Anonymous (AA) meetings; 2) pay plaintiff's (mother's) counsel fees; and 3) produce financial records to support an application to reduce child support.  On appeal, defendant raises the following points for our consideration:

> I. THE COURT ERRED IN RULING SUA SPONTE FOR [DEFENDANT] TO PROVIDE PROOF OF [AA] ATTENDANCE RETROACTIVELY TO MARCH[] 2017 WHEN HE WAS ONLY REQUIRED TO DO SO FROM FEBRUARY[] 15[,] 2018[,] FORWARD[.]
>
> II. THE COURT ERRED IN ORDERING [DEFENDANT] TO PAY [$2943.78] IN COUNSEL FEES[.]
>
> III. THE COURT IMPROPERLY DENIED [DEFENDANT'S] APPLICATION TO REDUCE [CHILD] SUPPORT FOR FAILING TO PROVIDE UPDATED FINANCIALS WHEN HIS APPLICATION WAS NOT BASED ON A FINANCIAL CHANGE OF CIRCUMSTA[N]CE[.]

---

[2] The non-dissolution or FD docket provides a mechanism for parents who were never married to each other to obtain relief from the trial court on matters pertaining to custody, parenting time, paternity, and child support.  R.K. v. D.L., 434 N.J. Super. 113, 131 (App. Div. 2014).

A-4057-17T3

We agree with defendant that the motion judge erred in requiring him to provide proof of attendance at AA meetings dating back to March 2017 because the requirement to provide proof of attendance began on February 15, 2018, when the parties entered into a consent order to that effect. We thus reverse that provision of the order. In all other respects, we affirm.

The parties were never married but have a daughter together, B.P.,[3] who was born March 2016 in Iowa where the parties resided together at the time. Shortly after B.P.'s birth, plaintiff moved to New Jersey with the child, leading to lengthy and contentious litigation regarding jurisdiction, custody, parenting time, and child support. Ultimately, plaintiff established that New Jersey had jurisdiction, and, on February 15, 2018, when the judge was about to begin a plenary hearing, the parties entered into a consent order resolving most of the outstanding issues in the case.

In the February 15, 2018 consent order (the first agreement), the parties agreed to "joint legal custody," with plaintiff being the "parent of primary residence" and defendant the "parent of alternate residence." "[S]upervised parenting time for . . . defendant" ceased with the entry of the order and a detailed parenting time schedule was established. In exchange, defendant

---

[3] We refer to the parties' child by initials to protect her privacy.

agreed to "continue to attend AA meeting[s] and show proof of attendance; continue hair follicle testing . . . ; [and] continue to have individual therapy." Further, defendant "agreed to pay [$7500] towards plaintiff's attorney's fees within one week." On the record, both parties confirmed they understood the terms and voluntarily entered into the agreement, acknowledged that the agreement was fair and reasonable under the circumstances, and denied any force or coercion by anyone.

On March 26, 2018, defendant moved to reduce his child support payments based on a reduction in B.P.'s daycare costs and an other-dependent deduction from the birth of his son with his fiancée. Defendant also sought counsel fees, in addition to other relief. In support, defendant certified that when the parties entered into the first agreement, "[t]here were numerous issues that both sides agreed needed to be 'buttoned up' and . . . ironed out to make a more permanent resolution." However, when his attorney sent a March 8, 2018 letter to "[p]laintiff's attorney to attempt to resolve these issues[,]" "the letter went ignored . . . and nothing was resolved." According to defendant, as a result, he was "forced" to bring the application to address the items listed in the March 8, 2018 letter, as well as other matters.

In the March 8, 2018 letter, which was attached to defendant's certification, defendant sought modifications to the parties' parenting time, holiday and vacation schedule, and concessions regarding out-of-state travel with B.P., among other things. The letter also acknowledged that defendant had failed to pay the $7500 counsel fee he agreed to pay plaintiff in the first agreement, but indicated that he had agreed in reliance on an expected refund of a fee paid to the Bergen Family Center, which was being disputed. While plaintiff opposed most of defendant's requests, she agreed to certain modifications to the holiday and vacation schedule and agreed to out-of-state travel with B.P. under certain conditions. However, plaintiff cross-moved for additional counsel fees and an order holding defendant in violation of litigant's rights for failing to comply with the provisions of the first agreement, requiring him to pay plaintiff's $7500 attorney's fee and provide proof that he was attending AA meetings, completing hair follicle testing, and undergoing individual therapy.

In a supporting certification, plaintiff pointed out that defendant failed to provide the court with any proof of his current income to support his request to reduce child support. Additionally, plaintiff asserted that "[d]efendant's obligation to pay [her $7500 attorney's fee] was not contingent upon any

event[,]" and defendant had "failed to provide [her] with any proof that he [was] attending AA meetings, complet[ing] hair follicle testing[,] or continu[ing] individual therapy" as required under the first agreement.

To support her request for additional attorney's fees, plaintiff stated "[d]efendant's application [was] filed in bad faith," "ill-timed, patently frivolous, and factually unfounded." Plaintiff explained that after the first agreement was executed, the only outstanding issues "were the [h]oliday [s]chedule" and restrictions on out-of-state travel. Thus, "[a]ny other issues raised by [d]efendant in his [March 8, 2018] letter [were] new demands." Plaintiff also stated that defendant "never followed up on the letter, but instead filed the present application without a phone call or email to [her] attorneys as to [their] position regarding same, again demonstrating [d]efendant's combative and litigious behavior." Plaintiff also submitted the required certification of services, detailing her attorney's experience, billing rates, and services rendered.

In response, defendant submitted supplemental exhibits, including hair follicle tests for March 10 and December 16, 2017, and March 10, 2018, showing negative alcohol screening results. He also submitted a document purporting to be proof of attendance at AA meetings for March 2017, an April 21, 2018 counseling update indicating that he had been undergoing individual counseling

6

since the first agreement, and a copy of a cashier's check for $3750 representing payment of one-half of plaintiff's $7500 attorney's fee.

The parties appeared for oral argument on May 1 and 3, 2018, at which time they reduced the agreed upon terms to a consent order dated May 3, 2018 (the second agreement), leaving the remaining issues for the judge to adjudicate. The judge then granted in part, and denied in part, defendant's application. Pertinent to this appeal, the judge agreed with plaintiff that defendant was required to submit "the appropriate [financial] information" before the application for a child support reduction could be considered. As a result, the judge denied the application "without prejudice based on the lack of submission of financial documentation."

Turning to plaintiff's cross-motion, during oral argument on May 3, 2018, the judge acknowledged receiving defendant's exhibit evidencing attendance at AA meetings in March 2017, but inquired whether defendant had been attending from March 2017 to the present, to which defendant responded that he had been. Noting privacy concerns and defendant's failure to provide the information to plaintiff on a timely basis, the judge directed defendant to obtain "a letter from the program indicating the dates of attendance" from "March 2017" to "today"

7

within "two weeks," and to provide results of his hair follicle tests "within seven days" of receipt.

As to counsel fees, initially, the judge ordered defendant to pay "the outstanding attorney's fees" of $3750 from the first agreement "within [sixty] days." The judge explained that defendant "did not adhere to his own agreement" and his dispute with "the Bergen Family Center . . . [had] nothing to do with [the first agreement]."

The judge then addressed plaintiff's request for counsel fees incurred to respond to defendant's present application as well as her cross-motion to enforce the first agreement. Relying on Williams v. Williams, 59 N.J. 229 (1971), Boardman v. Boardman, 314 N.J. Super. 340 (App. Div. 1998), and Rule 4:42-9(b), the judge concluded that a counsel fee award was appropriate, determined that the certification of services comported with the rule, and ordered defendant to pay plaintiff an additional $2943.78. In reviewing the applicable factors, regarding income, the judge noted that defendant "indicated he only work[ed] seasonal[ly]" but "retained his own counsel and live[d] with a significant other" while "plaintiff reside[d] with her mother." Further, while "[e]ach party ha[d] the ability to pay their own fees," "[g]iven the litigious nature of this action,"

both parties had amassed significant fees, with plaintiff having paid more than $11,000 in fees and owing her attorney $60,000.

As to "[t]he reasonableness and good faith of the positions advanced by the parties," the judge explained that because "both parties [were] firmly entrenched in their positions, . . . the reasonableness and the perspective [was] a little skewed." However, the judge found the good faith of defendant's position "troublesome," in light of the fact that defendant filed the application despite his non-compliance with the first agreement and without any "forewarning" in the March 8, 2018 letter to plaintiff's counsel that the application would be forthcoming if a "response [was] not received by a date certain[.]" The judge acknowledged that "the parties were able to reach an agreement on some of the issues[,]" but noted that defendant's failure to communicate caused plaintiff to incur additional attorney's fees. The judge entered a memorializing order and this appeal followed.

Our scope of review of Family Part orders is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). "Because of the family courts' special jurisdiction and expertise in family matters," id. at 413, "[t]he general rule is that findings by a trial court are binding on appeal when supported by adequate, substantial, credible evidence." Gnall v. Gnall, 222 N.J. 414, 428 (2015). However, we owe

no special deference to the trial court's "interpretation of the law and the legal consequences that flow from established facts." Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). Thus, reversal is reserved for only those circumstances in which we determine the factual findings and legal conclusions of the trial court "went so wide of the mark that a mistake must have been made." N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007) (quoting C.B. Snyder Realty, Inc. v. BMW of N. Am., Inc., 233 N.J. Super. 65, 69 (App. Div. 1989)).

Defendant argues the judge "arbitrarily required [him] to provide proof of attendance" at AA meetings "from March[] 2017 going forward," which was "a year prior to the [first agreement]." He asserts there was "no legal basis" for the judge's "sua sponte rul[ing]" because "there was no agreement to do so." He contends the ruling was "highly prejudicial" and "unconstitutional."

We agree that the court mistakenly ordered defendant to provide proof of AA attendance from March 2017 onward, apparently prompted by the fact that defendant's exhibit provided to the court to show proof of attendance was an AA pamphlet with "March 2017" written across the top. Contrary to defendant's intimation, the court did not order defendant to attend AA, but rather attempted to enforce the terms of the first agreement by requiring him to prove his

attendance at AA meetings.  However, because defendant agreed to "continue to attend AA meeting[s] and show proof of attendance" beginning February 15, 2018, when the first agreement was executed, he was not obligated to provide proof prior to that date.  We therefore reverse and remand for the court to amend that provision of the order to reflect the parties' agreement.

Next, defendant argues the court erred in ordering him to pay the entirety of plaintiff's additional attorney's fees "without conducting any substantive analysis" of the requisite factors.  We disagree.

An award of counsel fees in a Family Part action is a discretionary determination, Williams, 59 N.J. at 233, reached after consideration of the following nine factors:

> (1) the financial circumstances of the parties; (2) the ability of the parties to pay their own fees or to contribute to the fees of the other party; (3) the reasonableness and good faith of the positions advanced by the parties both during and prior to trial; (4) the extent of the fees incurred by both parties; (5) any fees previously awarded; (6) the amount of fees previously paid to counsel by each party; (7) the results obtained; (8) the degree to which fees were incurred to enforce existing orders or to compel discovery; and (9) any other factor bearing on the fairness of an award.
>
> [R. 5:3-5(c).]

See Mani v. Mani, 183 N.J. 70, 94-95 (2005) (explaining a court "must" consider these factors even though Rule 5:3-5(c) says a court "should" consider them).

However, not every factor need be considered. See Reese v. Weis, 430 N.J. Super. 552, 586 (App. Div. 2013). Further, even in the absence of a financial disparity between the parties, "fees may be used to prevent a maliciously motivated party from inflicting economic damage on an opposing party by forcing expenditures for counsel fees." J.E.V. v. K.V., 426 N.J. Super. 475, 493 (App. Div. 2012) (quoting Kelly v. Kelly, 262 N.J. Super. 303, 307 (Ch. Div. 1992)).

"We will disturb a trial court's determination on counsel fees only on the 'rarest occasion[s],' and then only because of clear abuse of discretion." Strahan v. Strahan, 402 N.J. Super. 298, 317 (App. Div. 2008) (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)). Here, we discern no clear abuse of discretion and are satisfied that the judge's decision had adequate support in the record. The judge analyzed the Rule 5:3-5(c) factors and properly considered "the good or bad faith of either party in pursuing or defending the action[,]" as contemplated in Mani, 183 N.J. at 94-95.

Finally, defendant argues the judge erred in "requiring production of financial documents" to consider his application to reduce child support based

on a twenty-five dollar reduction in work-related day care paid by plaintiff and a new dependent deduction from the birth of his son. We disagree.

A prima facie demonstration by the movant of changed circumstances is required to support a request for a modification of child support. Lepis v. Lepis, 83 N.J. 139, 157 (1980). "As a necessary and preliminary step to meeting this burden, a movant is required to submit both a current and a prior [case information statement (CIS)]." Palombi v. Palombi, 414 N.J. Super. 274, 291 (App. Div. 2010); see also R. 5:5-4(a) (requiring that movant attach both the initial and updated CIS to the modification request). Because child support awards are based on "available family income," Zazzo v. Zazzo, 245 N.J. Super. 124, 129 (App. Div. 1990), "[t]his mandate is not just window dressing. It is, on the contrary, a way for the trial judge to get a complete picture of the finances of the movants in a modification case." Gulya v. Gulya, 251 N.J. Super. 250, 253 (App. Div. 1991).

Here, defendant's admitted failure to provide his financial documents was fatal to his motion. Defendant's argument that he was not required to produce financial information because his application for child support modification was not based on changed financial circumstances is misguided. While the birth of an additional child to whom the obligor owes a duty of support often constitutes

a change in circumstances upon which a request for modification may be based, Schwarz v. Schwarz, 328 N.J. Super. 275, 283 (App. Div. 2000), where the obligation to support an additional family member does not substantially impair the obligor's ability to pay, a reduction of support may be inappropriate. See Heller-Loren v. Apuzzio, 371 N.J. Super. 518, 535 (App. Div. 2004).

Thus, the court was obligated to consider whether this change impaired defendant's ability to pay and could not have done so without defendant's financial documents. Additionally, the other-dependent deduction is only available when proof of income of the new child's other parent is supplied and "[a] parent must disclose the gross income of the other parent in the alternate family as a condition to the right to claim this deduction." Child Support Guidelines, Pressler & Verniero, Current N.J. Court Rules, Appendix IX-B to R. 5:6A, www.gannlaw.com (2019).

In sum, we reverse and remand for the judge to amend the provision of the order requiring defendant to provide proof of attendance at AA meetings since March 2017. Instead, the order should direct defendant to provide proof of attendance at AA meetings beginning February 15, 2018, when the first agreement was executed. We affirm in all other respects.

A-4057-17T3

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-4057-17T3