# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3770-19

D.L.K.,

    Plaintiff-Respondent,

v.

G.D.,

    Defendant-Appellant.

_____

        Submitted March 22, 2021 – Decided April 27, 2021

        Before Judges Sabatino and DeAlmeida.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Camden County, Docket No. FV-04-2377-20.

        Wayne R. Maynard, attorney for appellant.

        Respondent has not filed a brief.

PER CURIAM

Defendant G.D.[1] appeals from the April 29, 2020 final restraining order (FRO) entered against her by the Family Part pursuant to the Prevention of Domestic Violence Act (the Act), N.J.S.A. 2C:25-17 to -35. We vacate the FRO and remand for further proceedings.

I.

The following facts are derived from the record. G.D. is the adult daughter of plaintiff D.L.K. They do not reside in the same household. G.D. has a child, C.L.R., who was ten years old at the times relevant to this appeal. Pursuant to court order, D.L.K. has periodic grandparent visitation with C.L.R. The parties have had ongoing disputes with respect to custody of the child. D.L.K. has sought custody of C.L.R. on several occasions and contacted the Division of Child Protection and Permanency numerous times to report G.D. for perceived parenting failures. The agency has never taken action against G.D.

On March 10, 2020, D.L.K. had visitation with C.L.R. Although D.L.K. was under a court order not to contact G.D. and to exchange the child at a convenience store parking lot, she returned the child to G.D.'s home and entered G.D.'s house. G.D. told D.L.K. that she was starting a new job the following

---

[1] We use initials to preserve the confidentiality of court records concerning domestic violence. R. 1:38-3(d)(9).

2

day and would not be at home during the day for the remainder of the week. According to D.L.K., she informed G.D. that C.L.R. did not have school two days later and offered to have the child spend that day with her. G.D. viewed D.L.K.'s comment as interference with her parenting.

G.D. told D.L.K. to leave her house. D.L.K. refused. She stated that she would not leave the home until she was satisfied that G.D. had made suitable arrangements for C.L.R.'s care on the day he was off from school. G.D. grabbed D.L.K. by the arm and pulled her toward the front door and out of the house. As a result of the encounter, D.L.K. suffered scratches on her neck, an abrasion on her hand and arm, and "claw marks" on her arm from G.D.'s grip.

D.L.K. called 9-1-1 during the encounter. Police responded and arrested G.D. for assault. She was detained at the county jail. At G.D.'s request, D.L.K. took the child to her home.

The following day, D.L.K. appeared in the Family Part seeking temporary custody of C.L.R. The court granted D.L.K.'s request and set a date for the parties to return for further proceedings. The court's order did not expire upon G.D.'s release from jail.

On March 19, 2020, G.D. was released from jail. She contacted C.L.R. by telephone. She told the child she and the child's father would be coming to

pick him up. D.L.K., who was monitoring the call, interrupted to tell G.D. that she had obtained a court order granting her temporary custody of C.L.R. According to D.L.K, G.D. said "that's all changed now," she would be coming the next day to pick up C.L.R., and "[j]ust wait and see. You'll see what happens tomorrow when I come there." D.L.K. interpreted G.D.'s remarks as threatening

> [b]ecause she wasn't speaking to me like a normal, you know, daughter and mother would speak to her child and her mother when she got released from jail. . . . She should have inquired how her son was doing, if he had been to school, how his health was. She's been going on this fairytale story, mommy and daddy are coming to get you.[2]

On March 19, 2020, D.L.K. filed a domestic violence complaint alleging G.D. committed the predicate act of harassment, N.J.S.A. 2C:33-4(c), by threatening her during the telephone call. The complaint alleges G.D.'s assault of D.L.K. is evidence of a history of domestic violence. A municipal court judge issued a temporary restraining order (TRO) that day.[3]

---

[2] During her testimony, G.D. was not asked about the contents of her telephone conversation with D.L.K. After the close of testimony, G.D. attempted to dispute the accuracy of D.L.K.'s account of the conversation. The trial court refused to take any further testimony and made no specific findings of fact with respect to what G.D. said to D.L.K. during the call.

[3] In addition to prohibiting G.D. from having any contact with D.L.K., the TRO prohibits her from having any contact with her child, without an explanation of why such a prohibition was appropriate.

On April 29, 2020, the trial court held a hearing at which D.L.K. and G.D. testified. The court thereafter issued an oral opinion in which it concluded that G.D. committed the predicate act of assault, N.J.S.A. 2C:12-1, when she physically removed D.L.K. from her home on March 10, 2020.[4] With respect to the alleged act of harassment and D.L.K.'s need for an FRO, the entirety of the trial court's analysis, which was interrupted by G.D., was as follows:

> THE COURT: Then what occurred on March 19th is part and parcel of the continuing course of conduct. You wanted the child back [G.D.] and that – at that time there was a court order which prevents you from bringing the child back. Your action at that time was to file an order to show cause to return custody to you –
>
> [G.D.]: Right.
>
> THE COURT: – because you are now released from jail.
>
> [G.D.]: That's what I said, yes.
>
> THE COURT: That's – thank you. The court is going to grant the final restraining order. I think that is clear at this juncture.

On April 29, 2020, the court entered an FRO restraining G.D. from having any contact with D.L.K. For reasons that are not clear from the record, the FRO

---

[4] The court did not address the fact that the complaint does not allege a predicate act of assault.

also restrains G.D. from having any contact with C.L.R. The trial court made no findings with respect to whether the child witnessed the assault on D.L.K.

This appeal followed. Although G.D. concedes she assaulted her mother on March 10, 2020, she argues the trial court erred because the record does not support a finding that an FRO is necessary to protect D.L.K. from immediate danger or future acts of domestic violence.

## II.

"In our review of a trial court's order entered following trial in a domestic violence matter, we grant substantial deference to the trial court's findings of fact and legal conclusions based upon those findings." D.N. v. K.M., 429 N.J. Super. 592, 596 (App. Div. 2013) (citing Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)). We should not disturb the "'factual findings and legal conclusions of the trial judge unless [we are] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Cesare, 154 N.J. at 412 (alteration in original) (quoting Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 484 (1974)). Deference is particularly appropriate when the evidence is testimonial and involves credibility issues because the judge who observes the witnesses and hears the testimony has a perspective the reviewing court does not

enjoy. Pascale v. Pascale, 113 N.J. 20, 33 (1988) (citing Gallo v. Gallo, 66 N.J. Super. 1, 5 (App. Div. 1961)).

The entry of an FRO requires the trial court to make certain findings. See Silver v. Silver, 387 N.J. Super. 112, 125-27 (App. Div. 2006). The court "must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19[(a)] has occurred." Id. at 125. The court should make this determination "'in light of the previous history of violence between the parties.'" Ibid. (quoting Cesare, 154 N.J. at 402). Next, the court must determine "whether a restraining order is necessary, upon an evaluation of the factors set forth in N.J.S.A. 2C:25-29[(a)](1) to -29[(a)](6), to protect the victim from an immediate danger or to prevent further abuse." Id. at 127 (citing N.J.S.A. 2C:25-29(b)); see also J.D. v. M.D.F., 207 N.J. 458, 476 (2011). This determination requires evaluation of:

> (1) The previous history of domestic violence between the plaintiff and defendant, including threats, harassment and physical abuse;
>
> (2) The existence of immediate danger to person or property;
>
> (3) The financial circumstances of the plaintiff and defendant;
>
> (4) The best interest of the victim and any child;

(5)   In determining custody and parenting time the protection of the victim's safety; and

(6)   The existence of a verifiable order of protection from another jurisdiction.

[N.J.S.A. 2C:25-29(a); see also Cesare, 154 N.J. at 401.]

Our review of the record reveals that although G.D. concedes she committed the predicate act of assault against D.L.K., the trial court failed to conduct any analysis of the second prong of Silver and the six factors set forth in N.J.S.A. 2C:25-29(a).

Rule 1:7-4(a) states that a trial court "shall, by an opinion or memorandum decision, either written or oral, find the facts and state its conclusions of law thereon in all actions tried without a jury . . . ."  "The rule requires specific findings of fact and conclusions of law . . . ."  Pressler & Verniero, Current N.J. Court Rules, cmt. 1 on R. 1:7-4 (2021).  "[A]n articulation of reasons is essential to the fair resolution of a case."  Schwarz v. Schwarz, 328 N.J. Super. 275, 282 (App. Div. 2000).  Effective appellate review of a trial court's decision requires examination of the findings of fact and conclusions of law on which the trial court relied.  Raspantini v. Arocho, 364 N.J. Super. 528, 533-34 (App. Div. 2003).

The record contains no evidence of a history of domestic violence prior to the March 10, 2020 assault. Yet, the court made no mention of how an absence of such evidence influenced its decision. In addition, the statute requires consideration of whether a threat of "immediate danger to person or property" exists and a weighing of the best interest of a child where, as is the case here, an FRO will affect the child. The trial court made no findings of fact with respect to these factors and how they influenced its decision to issue an FRO.

Additionally, "we have previously expressed our concern that the Act may be misused in order to gain advantage in a companion matrimonial action or custody or visitation issue." Kamen v. Egan, 322 N.J. Super. 222, 229 (App. Div. 1999). While that observation was made in the context of allegations of predicate acts not involving violence, D.L.K.'s lengthy adversarial history of attempts to gain custody of C.L.R. raises similar concerns here. Although assaulted on March 10, 2020, D.L.K. did not file a domestic violence complaint until nine days later, after G.D. was released from jail and expressed her intent to regain custody of her child. On remand, the trial court must consider whether D.L.K., who admits she was in violation of a court order when she entered G.D.'s home and confronted her about her parenting of C.L.R., exaggerated her reaction

to the March 19, 2020 telephone conversation to secure an advantage in her ongoing attempts to gain custody of the child.

We are, therefore, constrained to remand the matter for findings of fact and conclusions of law with respect to whether entry of an FRO is warranted under the two-prong test set forth in Silver and N.J.S.A. 2C:25-29(a). We leave to the trial court in the first instance to determine whether additional testimony is necessary to make findings of fact with respect to what G.D. said during the March 19, 2020 telephone call or whether updated facts should be elicited concerning the present necessity for restraints. The TRO shall remain in place during the remand proceedings, with the exception of the provisions prohibiting G.D. from having contact with C.L.R., which we vacate on the assumption that custody of the child has been addressed in the companion proceeding initiated by D.L.K. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

10

A-3770-19