922 A.2d 754 (2007)
393 N.J. Super. 7
In the Matter of the CIVIL COMMITMENT OF J.P.
Superior Court of New Jersey, Appellate Division.
Submitted March 20, 2007.
Decided May 9, 2007.
*755 Ronald K. Chen, Public Advocate, attorney for appellant (Joan D. Van Pelt, Assistant Deputy Public Advocate, of counsel; Ruth Harrigan, of counsel and on the brief).
Stuart Rabner, Attorney General, attorney for respondent (Patrick DeAlmeida, Assistant Attorney General, of counsel; Swati M. Kothari, Deputy Attorney General, on the brief).
Before Judges KESTIN, WEISSBARD, and LIHOTZ.
*756 The opinion of the court was delivered by
LIHOTZ, J.T.C. (temporarily assigned).
J.P. appeals from a November 29, 2005 order requiring his involuntary civil commitment to the Special Treatment Unit (STU), as a sexually violent predator under the Sexually Violent Predator Act (SVPA), N.J.S.A. 30:4-27.24 to -27.38.
The SVPA defines a "[s]exually violent predator" as a person "who has been convicted . . . of a sexually violent offense, . . . and suffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for control, care and treatment." N.J.S.A. 30:4-27.26. Courts are authorized to order the involuntary civil commitment of an individual under the SVPA when the State has proven "by clear and convincing evidence that the person needs continued involuntary commitment as a sexually violent predator." N.J.S.A. 30:4-27.32(a). The Supreme Court has explained the standard for involuntary commitment under the SVPA as follows:
To be committed under the SVPA an individual must be proven to be a threat to the health and safety of others because of the likelihood of his or her engaging in sexually violent acts. . . . [T]he State must prove that threat by demonstrating that the individual has serious difficulty in controlling sexually harmful behavior such that it is highly likely that he or she will not control his or her sexually violent behavior and will reoffend.
Those findings . . . require an assessment of the reasonably foreseeable future. No more specific finding concerning precisely when an individual will recidivate need be made by the trial court. Commitment is based on the individual's danger to self and others because of his or her present serious difficulty with control over dangerous sexual behavior.
[In re Commitment of W.Z., 173 N.J. 109, 132-33, 801 A.2d 205 (2002).]
Commitment under the SVPA requires clear and convincing proof "of past sexually violent behavior, a current mental condition, and a demonstrated inability to adequately control one's sexually harmful conduct." State v. Bellamy, 178 N.J. 127, 136, 835 A.2d 1231 (2003).
The scope of appellate review of a trial court's decision in a commitment proceeding has been described as "extremely narrow, with the utmost deference accorded the [trial] judge's determination as to the appropriate accommodation of the competing interests of individual liberty and societal safety in the particular case." State v. Fields, 77 N.J. 282, 311, 390 A.2d 574 (1978). The trial court's determination may be modified "only where the record reveals a clear abuse of discretion" or a clear lack of evidence to support it." In re Civil Commitment of V.A., 357 N.J.Super. 55, 63, 813 A.2d 1252 (App.Div.) (quoting In re Commitment of J.P., 339 N.J.Super. 443, 459, 772 A.2d 54 (App.Div.2001)), certif. denied, 177 N.J. 490, 828 A.2d 917 (2003).
On appeal, J.P. presents two arguments:
POINT I
THE STATE FAILED TO PROVE BY CLEAR AND CONVINCING EVIDENCE AT THE REVIEW HEARING THAT J.[ ]P. WAS SUBJECT TO COMMITMENT AS A SEXUALLY VIOLENT PREDATOR.
POINT II
THE COURT ERRED IN RELYING ON HEARSAY CONTAINED IN THE TESTIMONY OF THE EXPERT WITNESSES *757 AND THEIR REPORTS IN REACHING ITS DECISION.
Based on our review of the record and the applicable law, we conclude that J.P.'s second argument is without sufficient merit to warrant extended discussion in a written opinion. R. 2:11-3(e)(1)(E). See In re Commitment of E.S.T., 371 N.J.Super. 562, 576, 854 A.2d 936 (App.Div.2004).
The first point raised in which J.P. contends he cannot be classified as a SVP because he has never been convicted of a "sexual offense" as defined in the SVPA, requires that we set forth the relevant facts.
J.P., now age thirty-five, was convicted of his first criminal offense in 1990, after being charged with possession of cocaine. On October 9, 1998, J.P. was charged with aggravated sexual assault, sexual assault, endangering the welfare of a child, and child abuse in connection with the alleged sexual molestation of a twelve-year old, whom he was babysitting. On July 17, 2001, J.P. pled guilty to endangering the welfare of a child. He was sentenced to three years probation and restrained from unsupervised contact with unrelated females under age sixteen.
On October 8, 1999, two separate incidents were reported by child congregants of J.P.'s church, alleging J.P. touched them at services. The first child, age twelve, stated J.P. touched her legs, kissed her mouth, and touched her vagina. The second child, age ten, stated J.P. touched her thigh and attempted to touch her vagina but she stopped him, and then, after the service ended, he touched her breasts. After this latter incident, J.P. was charged with sexual assault, endangering the welfare of a child, and child abuse. He pled guilty to the endangering charge and was sentenced to three years probation, concurrent with his prior sentence, and restrained from unsupervised contact with unrelated females under age sixteen.
A ten year-old reported that, on January 6, 2000, J.P. touched her buttocks, vagina and breasts, over her clothing while at church, for which he was charged with sexual assault and endangering the welfare of a child. These charges were dismissed as part of the prior plea agreement encompassing the 1998 and 1999 offenses.
J.P. was charged with the predicate offenses, after three separate child victims reported assaults on February 13, 2002. J.P. had accompanied his daughter G.S., age eight, on a class trip. M.H.[1] reported J.P. rubbed her vagina, buttocks, and breast area, over her clothing. He also placed her on his lap, unzipped her pants and touched her vaginal area. M.H. stated she saw J.P. unzip G.S.'s pants and put his hand down her pants, while G.S. sat on his lap. G.S. acknowledged that her father touched her many times beginning in 1996, when she was age three, and on one occasion, she awoke as J.P. was inserting a brush into her vaginal area. The third child, S.W., age ten, reported J.P. looked up her dress as he tied her shoe and rubbed her thighs. The indictment charged J.P. with three counts each of sexual assault, endangering the welfare of a child, and child abuse, along with one count of aggravated sexual assault. J.P. was charged separately with a violation of probation. In February 2003, J.P. pled guilty to three counts of third-degree endangering the welfare of a child and was sentenced to a custodial term of five years, to be served at the Adult Diagnostic Treatment Center (ADTC). Probation was revoked *758 and a concurrent sentence of four years was also imposed.
The State presented two expert witnesses during the initial commitment hearing held on November 29, 2005, Drs. Barone and Zeiguer. Defendant presented his expert, Dr. Siegel. Dr. Siegel, initially concluded, after conducting psychometric testing and obtaining clinical impressions, that J.P. was not highly likely to reoffend and Dr. Siegel did not recommend J.P.'s referral to the STU. Instead, he recommended that upon release, J.P. be "closely monitored" because "[he] wouldn't be surprised if [J.P.] did [reoffend], but [he] couldn't say that it was highly likely." Thereafter, Dr. Siegel was advised by a colleague that he incorrectly scored J.P.'s test results. Once correcting the test results, Dr. Siegel concluded J.P. should be referred to the STU.
In his report, Dr. Siegel recorded J.P.'s comments which included that: he had abused his daughter, he knew he had an attraction to pre-pubescent girls, and he recognized he should not have been on the class trip because of the terms of his probation. Dr. Siegel diagnosed J.P. as suffering from "pedophilia, sexually attracted to females, non-exclusive" and further concluded that J.P. "has impulses in that direction and they're likely to be ongoing."
The State's first expert, Dr. Zeiguer, interviewed J.P. for almost two hours, during which time J.P. discussed his past offenses. J.P. told Dr. Zeiguer he engaged in oral sex with his daughter, beginning at age three, and progressed to rubbing his genitals against hers. J.P. did not admit "sexual activity" took place during the 1998 event, and, when discussing the other offenses, admitted touching young girls, but not for "sexual gratification," which J.P. later defined as "intercourse."
Dr. Zeiguer too, concluded J.P. suffers from "pedophilia, non-exclusive" and a "personality disorder, extremely severe, with antisocial features." He opined that J.P. would not be deterred by being detected or by probation restrictions because he reoffended while on probation, and he was deceitful and manipulative.
Dr. Barone was the State's second expert witness. She stated that during her ninety minute clinical interview, J.P. admitted "he was sexually aroused by prepubescent girls," and he had been struggling with this arousal since age thirteen. J.P. acknowledged the offenses in 1999, 2000, and 2002, as well as the sexual molestation of his daughter while she was between ages six and nine.
Dr. Barone concluded J.P. suffers from "pedophilia, sexually attracted to females, nonexclusive"; "personality disorder NOS [not otherwise specified], with antisocial traits"; and that he had "difficulty controlling aggressive and sexual impulses." She concluded J.P. was highly likely to reoffend.
All experts agreed that J.P. received no meaningful treatment while confined to the ADTC due to disruptions in his placement because J.P. was involved in several institutional infractions, some of which involved written and verbal threats.
Prior to canvassing the expert testimony and documentary evidence, the trial judge stated:
The statute requires a person to commit a sexually violent offense, which is defined in the statute. In order to be subject to the statute, there's no dispute in this particular case that [J.P.] had committed such an offense and does come within the jurisdiction of the statute.
The trial judge further concluded J.P. "suffers from a mental [abnormality] in the form of pedophilia, . . . cocaine dependence and abuse," and "from a severe personality *759 disorder . . . NOS with antisocial traits." These conditions
predispose [J.P.] to engage in acts of sexual violence, and that if he were to be released within a relatively short time, certainly well within [the] reasonably foreseeable future, he would be highly likely to engage in this kind of conduct again.
The nature of what he does can seem somewhat minor in some cases, very serious in others, but the potential for very serious conduct, given the opportunity is there, as shown by his conduct with his daughter . . . and under the balancing test, given the nature of what he does and what he is shown capable of doing . . . balanced against a very high propensity, . . . I have no hesitancy in coming to the conclusion that he's dangerous, that he's a substantial high risk, and that he should be committed, and I will in fact commit him and set a review date of one year.
J.P. argues that the "charges of endangering the welfare of a child do not fall within the definition of a sexually violent predator." He contends that "the court admitted that [J.P.'s] charges were not of a sexual nature" and thus, the evidence could not support civil commitment. Our inquiry must determine whether the offenses supporting J.P.'s convictions comport with the statutory definition of "sexually violent offense." We have located no precedential guidance on this issue.
When interpreting a statute the Legislature's intent is the paramount goal. Generally, the best indicator of that intent is the statutory language. DiProspero v. Penn, 183 N.J. 477, 492, 874 A.2d 1039 (2005). "We ascribe to the statutory words their ordinary meaning and significance, and read them in context with related provisions so as to give sense to the legislation as a whole." American Fire & Cas. Co. v. N.J. Div. of Taxation, 189 N.J. 65, 79, 912 A.2d 126 (2006).
Our analysis begins with the examination of the plain language of the statute. Miah v. Ahmed, 179 N.J. 511, 520, 846 A.2d 1244 (2004). The SVPA's definitional provisions enumerate offenses encompassed within the meaning of "sexually violent offense," which include:
(a) aggravated sexual assault; sexual assault; aggravated criminal sexual contact; kidnapping pursuant to subparagraph (b) of paragraph (2) of subsection c. of N.J.S.A. 2C:13-1; criminal sexual contact; felony murder pursuant to paragraph (3) of N.J.S.A. 2C:11-3 if the underlying crime is sexual assault; an attempt to commit any of these enumerated offenses; or a criminal offense with substantially the same elements as any offense enumerated above, entered or imposed under the laws of the United States, this State or another state; or
(b)any offense for which the court makes a specific finding on the record that, based on the circumstances of the case, the person's offense should be considered a sexually violent offense.
[N.J.S.A. 30:4-27.26.]
The open-ended definition in subsection (b) must be interpreted in the light of the scope of the associated specific definitions in subparagraph (a). Following the ancient maxim of statutory construction, noscitur a sociis, the meaning of words may be indicated and controlled by those with which they are associated. See Germann v. Matriss, 55 N.J. 193, 220-21, 260 A.2d 825 (1970). When read together, the rational construction of these two paragraphs shows that the Legislature considered it appropriate to expand "sexually violent offense" to also include conduct which demonstrates the elements of the enumerated sexually violent offenses delineated *760 in subsection (a), even though the conviction may be for an offense other than those specifically listed. The specific findings requirement in subsection (b) assures that not just any conduct suffices; the demonstrated conduct must be in the nature of the type of sexual offenses enumerated.
In his decision, the trial judge only entered a conclusion on this issue, omitting to "make[] a specific finding on the record that, based on the circumstances of the case, [J.P.'s] offense should be considered a sexually violent offense." Trial judges must understand that the requirement to articulate specific findings under N.J.S.A. 30:4-27.26(b) is essential to meaningful review of the record. See e.g., Curtis v. Finneran, 83 N.J. 563, 569-70, 417 A.2d 15 (1980) (quoting Kenwood Assocs. v. Bd. of Adj. of Englewood, 141 N.J.Super. 1, 4, 357 A.2d 55 (App.Div.1976)); Schwarz v. Schwarz, 328 N.J.Super. 275, 282, 745 A.2d 592 (App.Div.2000).
Nevertheless, the record in this matter, when reviewed in its entirety, contains substantial credible evidence to support the trial court's conclusion that J.P.'s conduct falls within the definition of "sexually violent offense." During the expert evaluations by Drs. Siegel, Zeiguer and Barone, J.P. admitted that he touched the vagina, breasts and/or buttocks of female children. He additionally admitted that, over a period of several years, he committed cunnilingus on his daughter, required her to perform fellatio on him, and also rubbed his genitalia against hers; all of which were designed to achieve his sexual gratification. This conduct falls squarely within the definition of "sexual contact," N.J.S.A. 2C:14-1d, and demonstrates the elements of the crime of sexual assault, stated as: "an act of sexual contact with a victim who is less than 13 years old and the actor is at least four years older than the victim." N.J.S.A. 2C:14-2b. Sexual assault is one of the offenses specifically listed in N.J.S.A. 30:4-27.26(a).
J.P.'s victims were pre-pubescent girls over whom J.P. exercised control. Dr. Barone articulated that J.P. engaged in "grooming" to manipulate each child, "utiliz[ing] his roles [as an] authority figure to gain access to child victims," then "acting out his deviant sexual impulses." We cannot know why these very serious offenses were resolved by pleas to the crime of endangering. In any event, sufficient substantial evidence supports that J.P.'s offenses are sexually violent offenses, as defined by the SVPA, even though the guilty pleas entered were for the offense of endangering the welfare of a child. Although the trial judge did not recite specific findings on the record for this conclusion, the factual basis supporting such a determination is readily found within his oral decision issued December 1, 2005 and we do not hesitate to exercise our original jurisdiction to make the finding. See R. 2:10-5. With this addition, the findings of the trial court are based upon substantial credible evidence and are entitled to considerable deference on appeal. See Fields, supra, 77 N.J. at 311, 390 A.2d 574; V.A., supra, 357 N.J.Super. at 63, 813 A.2d 1252 (quoting J.P., supra, 339 N.J.Super. at 459, 772 A.2d 54).
The State additionally has proven that J.P. presently suffers from a "mental abnormality or personality disorder," namely, pedophilia, and a severe personality disorder, NOS, with antisocial traits. This condition, which to date has been virtually untreated, makes J.P. "likely to engage in acts of sexual violence." Further, the State has established that J.P. has "serious difficulty with control over dangerous sexual behavior." See W.Z., supra, 173 N.J. at 132-33, 801 A.2d 205. Finally, the record establishes, by clear *761 and convincing evidence, that J.P. currently presents a high likelihood of reoffending, see In re Commitment of P.Z.H., 377 N.J.Super. 458, 463, 873 A.2d 595 (App. Div.2005), necessitating civil commitment to the STU for treatment.
Affirmed.
NOTES
[1] The State's Petition for Civil Commitment and its brief mistakenly recite the child's initials as "M.S.".