# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3821-17T5

IN THE MATTER OF THE CIVIL
COMMITMENT OF E.B.,
SVP-724-15.

_____

Argued March 5, 2019 – Decided March 26, 2019

Before Judges Fisher and Hoffman.

On appeal from Superior Court of New Jersey, Law Division, Essex County, Docket No. SVP-724-15.

Susan Remis Silver, Assistant Deputy Public Defender, argued the cause for appellant E.B. (Joseph E. Krakora, Public Defender, attorney; Susan Remis Silver, on the briefs).

Stephen J. Slocum, Deputy Attorney General, argued the cause for respondent State of New Jersey (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Stephen J. Slocum, on the brief).

Appellant filed a pro se supplemental brief.

PER CURIAM

E.B. appeals from an April 3, 2018 judgment committing him to the State of New Jersey Special Treatment Unit (STU), pursuant to the Sexually Violent Predator Act (SVPA), N.J.S.A. 30:4-27.24 to -27.38.  In 2017, we reversed a 2016 commitment judgment, finding the State's experts based their opinions, at least in part, on inadmissible evidence.  In re Civil Commitment of E.B., No. A-2404-15 (App. Div. November 17, 2017) (slip op. at 13).  We therefore remanded for "a new hearing to assess E.B.'s current condition and risk of sexual violence."  Id. at 13-14.

On this appeal, E.B. argues the trial court again committed him "based on unproven hearsay allegations," asserting the State's experts' testimony lacked empirical bases and constituted net opinions.  In a pro se supplemental brief, E.B. contends the trial court denied him procedural due process by not holding a hearing within twenty days of the previous remand.  We reject these arguments and affirm.

I.

On July 14, 2014, E.B. pleaded guilty to Community Supervision for Life (CSL) violations, which included initiating contact with a fourteen-year-old girl, missing required treatment sessions, and failure to notify police of an address change.  The record reveals the minor reported that E.B. called out to her,

2

stating, "Yo little girl, come here, come here." The minor stated E.B. followed her, making her feel nervous and scared; when she eventually turned around, he was gone. E.B. received an eighteen-month sentence for these violations. Before E.B.'s release, the Attorney General successfully petitioned to have him committed pursuant to the SVPA.

In reversing the 2016 commitment judgment, we concluded the State's experts relied too heavily on unproven allegations, namely police reports of contact with underage females, which did not lead to convictions. Id. at 13. After a two-day hearing, Judge James F. Mulvihill[1] committed E.B. to the STU, finding he "has serious difficulty controlling his sexually violent behavior," and is "highly likely to sexually reoffend."

In 1992, E.B. pleaded guilty to second-degree sexual assault, N.J.S.A. 2C:14-2(c)(1). He was sentenced to an eight-year term of imprisonment, subject to a four-year period of parole ineligibility. In addition, he was sentenced to CSL and ordered to register under Megan's Law. E.B., slip op. at 1. During his plea colloquy, E.B. stated he, along with other men, participated in a gang attack upon a group of young girls at a public swimming pool. Ibid. E.B. admitted he vaginally penetrated one of the girls in the pool. Id. at 1-2. The victim was less

---

[1] A different judge heard and decided the matter in 2016.

A-3821-17T5

than sixteen but older than thirteen years of age; E.B. was twenty-two years old at the time. Id. at 2.

In 2002, E.B. pleaded guilty to second-degree sexual assault, N.J.S.A. 2C:14-2(b). It is not disputed E.B. fondled the breasts and buttocks of an eleven-year old female and engaged in several sexually-explicit telephone conversations with her. Ibid. He was sentenced to a ten-year term at the Adult Diagnostic and Treatment Center (ADTC), subject to a five-year period of parole ineligibility. Ibid. At the time of his sentence, he had been convicted of ten indictable offenses, including guilty pleas to the two sexual offenses. Ibid.

In 2008, upon E.B.'s release from the ADTC, two psychologists stated, in an ADTC "Termination Report," that E.B. understood his deviant arousal pattern and offending dynamics, and had developed coping mechanisms to deal with high risk situations. An addendum to the "Termination Report" stated that although objective testing "suggests a high risk for sexual re-offense[,] [f]rom a clinical perspective[,] his overall risk of sexual re-offense appears to be substantially reduced by [his] significant treatment gains," and a "strong support system" provided by his family. Id. at 2-3. Nevertheless, the psychologists recommended that upon his discharge E.B. "avoid children and relationships with women who have children."

A-3821-17T5

In 2011, E.B. pleaded guilty to using marijuana, in violation of CSL, and the court sentenced him to a nine-month prison term. The record also demonstrates a number of other non-sexual crimes committed by E.B. over the years, mostly drug-related. As noted, in July 2014, E.B. pleaded guilty to the CSL violations, which included initiating contact with an underage female, leading to an eighteen-month prison term.

At the remand hearing before Judge Mulvihill, the State presented the testimony of Dr. Roger Harris, a psychiatrist, who interviewed E.B. on two occasions in 2015. From these examinations, along with his review of E.B.'s criminal and treatment records, Dr. Harris diagnosed E.B. with other specified paraphilic disorder, or hebephilia, "to describe [E.B.'s] arousal to teenage girls, who are under[]age," and antisocial personality disorder.

Dr. Harris testified that the combination of E.B.'s two disorders "increases the[] risk to sexually reoffend"; that E.B. "is at a high risk to reoffend if placed in a less restrictive setting than the STU"; that E.B. "has demonstrated a volitional deficit in being able to control his sexual arousal to underage teenage girls"; and that E.B. has "demonstrated a failure to conform to social norms."

According to Dr. Harris, E.B.'s score of six on the Static-99 test[2] places him "well above [the] average risk to sexually reoffend."

Dr. Laura Carmignani, a psychologist, completed a forensic evaluation of E.B. in January 2018.[3]   She diagnosed E.B. with other specified paraphilic disorder (hebephiliac); other specified personality disorder with antisocial traits; and cannabis use disorder.  Like Dr. Harris, Dr. Carmignani found E.B. scored a six on the Static-99 test, which she "then considered with the aggravating influence of his history of noncompliance under community supervision[,] indicat[ing] that his overall risk to sexually recidivate falls within the 'highly likely' threshold."   She also scored E.B. "within the [h]igh range on the STABLE-2007," which "was developed to assess change in intermediate term risk status, assessment needs, and help predict recidivism in sexual offenders."

---

[2]  "The Static-99 is an actuarial test used to estimate the probability of sexually violent recidivism in adult males previously convicted of sexually violent offenses."  In re Civil Commitment of R.F., 217 N.J. 152, 164 n.9 (2014).  Our Supreme Court "has explained that actuarial information, including the Static-99, is 'simply a factor to consider, weigh, or even reject, when engaging in the necessary factfinding under the SVPA.'"  Ibid. (quoting In re Commitment of R.S., 173 N.J. 134, 137 (2002)).

[3]  Dr. Carmignani's evaluation did not include any input from E.B., who declined her request for an interview.  However, about a year before her testimony, Dr. Carmignani met with E.B. for a Treatment Progress Review Committee review.

A-3821-17T5

E.B "also fell within the [h]igh range on the PCL-R, a measure of psychopathic personality traits." Ultimately, Dr. Carmignani opined, "within a reasonable degree of psychological certainty," that E.B. "presents as a high risk and is highly likely to engage in future acts of deviant sexual behavior as defined by the SVP statute if released into the community at this time."

Dr. Harris and Dr. Carmignani noted the unproven allegations of E.B.'s contact with underage females in their reports and testimonies; however, they each minimized their use of the information in reaching their conclusions. When Dr. Harris was asked if he used the unproven allegations as a "significant or substantial building block to form [his] diagnosis of antisocial personality disorder," Dr. Harris responded, "No." When asked if he was "to ignore the CSL violations[,] would [he] still diagnose antisocial personality disorder," Dr. Harris testified, "Yes." Finally, he stated that he did not "weigh" the unproven allegations "heavily," as "his two offenses are a clear indication, his approaching the [eleven]-year-old and his 199[2] offense are sufficient." Regarding the charges against E.B. that were dismissed, Dr. Carmignani testified, "I understand that the charges were dismissed and they were not pursued legally. I consider them, but they are not significant building blocks to . . . my overall opinion and . . . evaluation." Dr. Carmignani testified that her opinion that E.B.

is highly likely to reoffend would not change if the dismissed charges "did not exist at all."

Judge Mulvihill concluded that the State had shown by clear and convincing evidence that E.B. "continues to suffer mental abnormality, personality disorder," "other specified personality disorder," and "hebephilia, attracted to teenage girls." The judge further found by "clear and convincing evidence that presently [E.B. is] highly likely to sexually reoffend."

Judge Mulvihill found the State's experts "were both very credible witnesses . . . ." He noted the testimony of Dr. Harris regarding E.B.'s "strong antisocial attitude and behavior," which "does not spontaneous[ly] remit."

> There's a volitional deficit, sexually aroused to teenage girls. Static-99R is a [six], well above average risk to sexually reoffend. In the opinion of Dr. Harris, he's highly likely to sexually reoffend[,] [to a r]easonable degree of psychiatric certainty.
>
> . . . .
>
> And then in 2014, he approached the [fourteen]-year-old, show[ing] that his other specified paraphilia is alive and well, and that Dr. Harris opined that he is highly likely to sexually reoffend despite having some mitigation of his risk through treatment.

Addressing Dr. Carmignani's testimony, the judge found that she gave "less weight to the allegations where the charges were dismissed." The judge found that

E.B.'s "PCL-R score [was a] 27.8, which is in the high range of psychopathy. Doesn't meet the threshold of a 30, but still in the high range . . . . [which ranges from] 25 to 32."  Based on Dr. Carmingnani's diagnoses of E.B., the judge found she concluded the "[r]isk to reoffend is highly likely within a reasonable degree of psychological certainty."

The judge further found that

> even though [E.B.] . . . did well at ADTC[,] . . . . the other specified paraphilic disorder is still there because he approached a [fourteen]-year-old girl and he was told that he should have no contact with any teenage girls.  Despite that, he did that, [pleaded] guilty and went to prison for that.
>
> It's not a sexual offense, but it shows his deviant arousal, which he acknowledged, to teenage girls is . . . alive and well.  And he has had some mitigation of risk, but . . . there's clear and convincing evidence he's been convicted of sexual violent offenses.

## II.

We first address E.B.'s argument that the trial court based its commitment order on inadmissible and unreliable hearsay.  Defendant points to portions of the record where the State's experts were questioned on the CSL violations, police reports, and allegations against E.B. that were dismissed and never substantiated.  In each of the cited instances, E.B.'s counsel objected based on hearsay, and the trial judge overruled the objections, thereby allowing the

9

A-3821-17T5

experts to discuss the allegations. We are not convinced that the manner in which the court utilized the hearsay documents warrants a reversal of the court's commitment order.

Courts may order the involuntary civil commitment of a person under the SVPA when the "State has proven 'by clear and convincing evidence that the person needs continued involuntary commitment as a sexually violent predator.'" In re Civil Commitment of J.P., 393 N.J. Super. 7, 11 (App. Div. 2007) (quoting N.J.S.A. 30:4-27.32(a)). A "sexually violent predator" is

> a person who has been convicted . . . for commission of a sexually violent offense . . . and suffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for control, care and treatment.
>
> [N.J.S.A. 30:4-27.26.]

To prove that commitment is necessary, the State must establish that "the individual has serious difficulty in controlling sexually harmful behavior such that it is highly likely that he or she will not control his or her sexually violent behavior and will reoffend." In re Civil Commitment of W.Z., 173 N.J. 109, 132 (2002).

In evaluating the evidence, "a trial court's evidentiary rulings are 'entitled to deference absent a showing of an abuse of discretion . . . .'" State v. Brown,

170 N.J. 138, 147 (2001) (quoting State v. Marrero, 148 N.J. 469, 484 (1997)). "[A]n appellate court should not substitute its own judgment for that of the trial court, unless 'the trial court's ruling was so wide of the mark that a manifest denial of justice resulted.'" Ibid. (quoting Marrero, 148 N.J. at 484) (internal quotations omitted).

In commitment hearings, "official reports, including police reports, [may be] properly considered and used by the court as relevant background information and [may be] properly considered by . . . experts, although the included hearsay may not be admitted as substantive information." In re Civil Commitment of J.M.B., 395 N.J. Super. 69, 94-95 (App. Div.), aff'd, 197 N.J. 563 (2007). "[S]ignificant state action, such as SVPA commitment, cannot and should not be based on unproven allegations of misconduct," particularly those not subject to cross-examination. In re Civil Commitment of A.E.F., 377 N.J. Super. 473, 490 (App. Div. 2005).

Here, E.B. cites to portions of the record where the State's experts were questioned about the CSL violations, police reports, and allegations against E.B. that were dismissed and never substantiated. E.B.'s counsel objected on the basis of inadmissible hearsay, and the trial judge overruled the objections, thereby allowing the experts to discuss the allegations. However, the

11

introduction of this evidence did nothing more than relate E.B.'s history and background, as both experts testified that they did not consider the evidence as significant building blocks, and they would have reached the same conclusions if the evidence did not exist. Thus, the experts' opinions in the second trial did not suffer from the same deficiencies as the experts' opinions in the first trial. Instead, the experts here properly focused their opinions on E.B.'s current condition, based upon admissible evidence.

E.B. also argues that his statement from his 2014 conviction, "Yo, little girl, come here," was a hearsay statement assumed as true by both experts, and that both experts assumed the offense was sexual in nature. E.B. pleaded guilty to initiating contact with a minor, in violation of CSL, and served eighteen months for the crime. He also admitted guilt of this offense to both of the experts who interviewed him before his first commitment hearing, each time stating he was abusing drugs and alcohol at the time. Our Supreme Court also noted that such statements can properly be admitted as statements of a party for the purpose of assessing whether the conduct "constituted a sexually violent offense substantially equivalent to the conduct encompassed in" the listed offenses under N.J.S.A. 30:4-27.26(a). J.M.B., 197 N.J. at 597 n.9.

"The judges who hear SVPA cases generally are 'specialists' and 'their expertise in the subject' is entitled to 'special deference.'" In re Civil Commitment of R.F., 217 N.J. 152, 173-74 (2014) (quoting In re Civil Commitment of T.J.N., 390 N.J. Super. 218, 226 (App. Div. 2007)). We find there is substantial and credible evidence in the record for the judge to have concluded the 2014 incident demonstrated E.B.'s deviant arousal, and that special deference should be accorded as to this part of the holding.

E.B. next argues that the testimonies of Dr. Harris and Dr. Carmignani lacked empirical bases establishing that E.B. was highly likely to reoffend, and therefore constituted net opinions. In another civil commitment case, we recently discussed the admissibility of expert opinions:

> "An expert may not provide an opinion at trial that constitutes 'mere net opinion.'" Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 410 (2014) (quoting Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 372 (2011)). The net opinion rule bars admission "of an expert's conclusions that are not supported by factual evidence or other data." [Townsend v. Pierre, 221 N.J. 36, 53-54 (2015)] (quoting Polzo v. Cty. of Essex, 196 N.J. 569, 583 (2008)). The expert must provide the factual basis and analysis that support the opinion, rather than stating a mere conclusion. Davis, 219 N.J. at 410. Courts "may not rely on expert testimony that lacks an appropriate factual foundation and fails to establish the existence of any standard about which the expert testified." Ibid. (quoting Pomerantz Paper, 207 N.J. at 373).

The net opinion rule does not require experts to organize or support their opinions in a specific manner "that opposing counsel deems preferable." Townsend, 221 N.J. at 54. Consequently, "[a]n expert's proposed testimony should not be excluded merely 'because it fails to account for some particular condition or fact which the adversary considers relevant.'" Ibid. (quoting Creanga v. Jardal, 185 N.J. 345, 360 (2005)). An expert's failure "to give weight to a factor thought important by an adverse party does not reduce his testimony to an inadmissible net opinion if he otherwise offers sufficient reasons which logically support his opinion." Ibid. (quoting Rosenberg v. Tavorath, 352 N.J. Super. 385, 402 (App. Div. 2002)). Instead, such omissions may be subjected to exploration and searching cross-examination at trial. Id. at 54-55.

Even so, the net opinion doctrine requires experts to "be able to identify the factual bases for their conclusions, explain their methodology, and demonstrate that both the factual bases and the methodology are [scientifically] reliable." Id. at 55 (quoting Landrigan v. Celotex Corp., 127 N.J. 404, 417 (1992)).

In [In re Accutane Litig., 234 N.J. 340 (2018)], the Supreme Court explained trial courts perform their "gatekeeping role" to assure reliability of expert scientific testimony by requiring experts "to demonstrate" they applied "scientifically recognized methodology in the way that others in the field practice the methodology." Id. at 399-400. Thus, when "a proponent does not demonstrate the soundness of a methodology, both in terms of its approach to reasoning and to its use of data, from the perspective of others within the relevant scientific community, the

gatekeeper should exclude the proposed expert testimony on the basis that it is unreliable." Id. at 400.

[In re Civil Commitment of A.Y., ___ N.J. Super. ___ (App. Div. 2019) (slip op. at 26-28).]

Here, E.B. contends the State's experts failed to present evidence that he had at least a fifty-one percent chance of reoffending. He points to Dr. Harris' assessment that E.B.'s score of six on the Static-99 test amounts to a 25.7 percent recidivism rate. However, our Supreme Court refused to impose a technical meaning or quantitative threshold in establishing a lack of control; rather it held that "the State must prove by clear and convincing evidence . . . it is highly likely that the person will not control his or her sexually violent behavior and will reoffend." W.Z., 173 N.J. at 133-34. E.B. provides no legal support for his argument that we should interpret "highly likely" to mean "clearly more than just a [fifty-one percent] risk."

Moreover, E.B. ignores the fact that both of the State's experts interviewed E.B. extensively and relied on prior evaluations, treatment records, a thorough review of E.B.'s past, and actuarial instruments that are "generally accepted by professionals who assess sex offenders for risks of re[-]offense." In re Commitment of R.S., 339 N.J. Super. 507, 538 (App. Div. 2001); see also In re R.S., 173 N.J. 134, 137 (2002) ("[A]ctuarial risk assessment instruments may be

A-3821-17T5

admissible in evidence in a civil commitment proceeding under the SVPA when such tools are used in the formation of the basis for a testifying expert's opinion concerning the future dangerousness of a sex offender."). The State's experts provided the factual bases for their conclusions and explained the methodologies they employed. The State's experts therefore satisfied the requirements imposed by the Court in Accutane, and the trial court did not abuse its discretion in admitting and considering the testimony of Dr. Harris and Dr. Carmignani.

To the extent not specifically addressed here, plaintiff's remaining arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3821-17T5