# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS.   A-1676-18T1
                        A-1887-18T1

WENDY CURRAN,

     Plaintiff-Respondent,

v.

KEVIN CURRAN,

     Defendant-Appellant.

_____

> Argued February 25, 2020 – Decided April 6, 2020
>
> Before Judges Yannotti, Currier and Firko.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Morris County, Docket No. FM-14-1198-12.
>
> Kevin Curran, appellant, argued the cause pro se.
>
> John E. Clancy argued the cause for respondent (Townsend, Tomaio & Newmark, LLC, attorneys; John E. Clancy, on the brief).

PER CURIAM

In this post-judgment matrimonial matter, under Docket No. A-1676-18, defendant Kevin Curran appeals the Family Part's August 29, 2018 order which, among other things, denied his request to compel plaintiff Wendy Curran to obtain his written consent when taking their children out-of-state or out of school temporarily; denied his motion for a reduction in child support without prejudice; and required defendant to pay the cost for a certified public accountant to review and value plaintiff's retirement accounts for purposes of equitable distribution.

Defendant also appeals under Docket No. A-1887-18 from an order dated December 12, 2018, which denied his motion for reconsideration of various provisions of the August 29, 2018 order; denied the parties' requests for frivolous litigation sanctions; and awarded plaintiff attorney's fees. We consolidate these appeals for purposes of our opinion and affirm both orders.

I.

We derive the following facts from the motion record. The parties were divorced by way of a November 20, 2013 judgment, which incorporated the terms of a property settlement agreement (PSA). They have two children, born in February 2007 and August 2010.

A-1676-18T1

Article 2.1 of the PSA designated plaintiff as the primary, residential, custodial parent of the minor children, and defendant was to continue weekly therapeutic supervised parenting time with Dr. Mathias Hagovsky, or another mutually agreed upon supervisor until further order of the court. As per the terms of the PSA, after the court-appointed expert, Dr. Sharon Ryan-Montgomery, concluded her evaluation, either party could file a post-judgment motion to modify the parenting plan. Dr. Ryan-Montgomery issued her report on May 20, 2014. The record indicates that neither party made a motion to modify the parenting plan in the six years since the divorce.

After her evaluation, Dr. Ryan-Montgomery recommended a parent coach for defendant and a parent coordinator to reunify the children with their father and monitor his progress with psychotherapy. The record shows that defendant's visitation with the children was minimal since the divorce.

Defendant argued he was awarded "joint" custody of the children and therefore, plaintiff could not take the children out of New Jersey, even temporarily, without his prior written consent. He also argued plaintiff could not take the children out of school unnecessarily without his consent.

In February 2018, defendant claimed he learned, after the fact, that plaintiff took the children to West Point, Pennsylvania, Illinois to visit their

cousins, New York City to see a Broadway show, and Florida to see their grandparents. He asserted that plaintiff's travel constituted a "major" decision in which he should have participated. Further, he asserted these excursions violated the legal requirement that the children regularly attend school, the custody statute governing the out-of-state removal of a child, under N.J.S.A. 9:2-2, and the criminal statute prohibiting interference with custody, N.J.S.A. 2C:13-4. He sought an injunction to preserve the status quo and prohibit further out-of-state trips without his prior written consent and approval.

Defendant also contended that plaintiff twice caused one of the children to almost reach the truancy threshold of ten unexcused absences, exposing the child to discipline and plaintiff to prosecution as a disorderly person as the parent of a truant child under N.J.S.A. 18A:38-31. Besides the potential penal consequences, defendant asserted missing school harmed the children with lost instruction, limited their social opportunities, and imposed a financial cost to the school district. According to defendant, the purported harm is tantamount to abuse and neglect pursuant to N.J.S.A. 9:6-8.21(c).

The motion judge determined that plaintiff did not present any evidence to rebut the presumption that the parties shared legal custody of the children. However, as the children's primary caretaker, the judge found plaintiff had

autonomy over the daily activities of the children, and as the primary residential parent, "she is entitled to take short vacations out of state with the children during her parenting time, provided there was no interference with defendant's supervised parenting time with Dr. Hagovsky." The judge rejected defendant's argument that there was permanent removal of the children and criminal interference with his parenting time, as defined by New Jersey law.

Noting that short vacations during plaintiff's parenting time with the children does not constitute a "major decision" requiring defendant's consent, the judge found the children "are entitled to enjoy vacations as part of their childhood." However, the judge restricted plaintiff from taking the children out of school and incurring unexcused absences, limiting each child to the amount of unexcused absences allowed by the school district per year.

As to child support, paragraph 2.2 of the PSA required defendant to pay $2000 per month to plaintiff, subject to a biennial Cost of Living Adjustment (COLA). Defendant is a bilingual patent attorney with over twenty years of experience. The child support was based on defendant's 2013 income of approximately $162,403.77, comprised of a portion of his salary as in-house patent counsel for Bayer, a signing bonus, and his self-employment income from Curran Patent Law of $30,000 annually. Plaintiff's 2013 income was

5

$264,670.99, comprised of salary and bonuses, working in the pharmaceutical industry in New Jersey.

Defendant has since been terminated from the in-house counsel position and certified to the motion judge that he has been unable to find comparable work and compensation. He claimed only to be earning approximately $30,000 per year self-employed at his own practice, which is significantly less than the amount upon which his original obligation was based. In his moving certification, defendant stated he is a member of an actor's union, SAG-AFTRA, and that he applied for acting jobs without success. Defendant argued that this change in circumstances warranted a modification of his child support obligations. Because defendant failed to produce tax returns or any other corroboration of his current income, the judge denied defendant's application, without prejudice.

As per the terms of the PSA, an accountant, Mr. Krasnomowitz, was engaged to determine the pre-marital and marital portions of plaintiff's retirement accounts as of the date the complaint for divorce was filed, March 13, 2012. Plaintiff's retirement assets were partially distributed to defendant after the divorce was entered.

A-1676-18T1

Paragraph 5.5(a) of the PSA addressed equitable distribution of plaintiff's retirement assets:

> The marital part of [plaintiff's] retirement assets as of the date of the [c]omplaint for [d]ivorce (March 13, 2012) shall be divided equally, <u>subject to any market gains or losses</u>, in accordance with the portion of [Alex E.] [Krasnomowitz's repor]t . . . that determined the marital-premarital distribution as of the date of the [c]omplaint for [d]ivorce. . . . A Qualified Domestic Relations Order ("QDRO") shall be used, if necessary, prepared by All Pro or its equivalent to transfer the aforesaid retirement assets, the cost for which shall be equally shared between the parties (50/50).
>
> [(Emphasis added).]

In her moving certification, plaintiff stated that defendant failed to cooperate with several requests she made to effectuate the distribution through execution of a QDRO, making it necessary to file a motion to compel enforcement of paragraph 5.5(a) of the PSA. Defendant argued that no QDRO was necessary because the only account at issue was plaintiff's 401(k) plan, which was rolled over into an Individual Retirement Account (IRA).

With respect to the retirement accounts, in her ruling, the judge explained that because approximately five years have passed since the execution of the PSA, it was necessary for Mr. Krasnomowitz "to update his report to determine the effect of market gains or losses." The parties were ordered to retain Mr.

Krasnomowitz within fifteen days and execute a QDRO within thirty days. The judge ordered defendant to pay Mr. Krasnomowitz's $7500 retainer, relying on plaintiff's certification that defendant was uncooperative regarding distribution of her retirement accounts.

Defendant also moved to compel Dr. Hagovsky to prepare a report regarding defendant's visitation with the children. In support of his motion, defendant asserted that Dr. Hagovsky had observed over one hundred hours of interaction between defendant and the children, and he was qualified as an expert on parenting time issues, since he was the court-appointed therapeutic monitor. On reconsideration, the judge denied defendant's request without prejudice, reasoning that he failed to establish a prima facie case of changed circumstances regarding custody and parenting time.

Both parties sought fees and sanctions on frivolous litigation grounds under Rule 1:4-8 and their respective applications were denied. With respect to plaintiff's application for an award under Rule 1:4-8 for having to respond to defendant's motion seeking an injunction against her out-of-state trips with the children, the judge noted defendant's motion "cite[d] largely irrelevant law" but was not made in bad faith. However, after defendant continued to file applications with the court, including a twenty-three-page letter improvidently

presenting additional arguments and criticizing plaintiff and her counsel, the judge concluded he acted in bad faith. Additionally, the judge noted defendant's actions were unfair since he was in violation of litigant's rights relative to non-payment of expenses related to the children, and not completing the QDRO. Moreover, he incurred no counsel fees as a self-represented litigant.

On appeal, defendant argues the motion judge erred by: (1) not preventing plaintiff from taking brief trips and vacations with the children out-of-state without his prior written consent; (2) not finding plaintiff caused the children to be absent excessively from school; (3) ruling an accountant should update the value of plaintiff's retirement accounts for equitable distribution at his expense; (4) denying his motion for a reduction in child support because he presented a prima facie case of changed circumstances; (5) awarding frivolous litigation fees without complying with Rule 1:4-8; (6) denying his motion for frivolous litigation fees; and (7) failing to reconsider her order of August 29, 2018.

## II.

We first consider our standard of review. "[F]indings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998) (citing Rova Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 484 (1974)). We will not disturb

the factual findings and legal conclusions of a trial judge unless we are convinced that those findings and conclusions are "so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice . . . ." Rova Farms, 65 N.J. at 484. In particular, family courts "possess special expertise in the field of domestic relations[,]" and as such "appellate courts should accord deference to family court factfinding." Cesare, 154 N.J. at 412-13.

A.    Out-of-State Trips Without Defendant's Consent.

Defendant claims that the judge abused her discretion in declining to enjoin plaintiff from taking the children on out-of-state trips without his consent. In order to obtain a permanent injunction, the movant must demonstrate the liability of the party against whom the injunction is sought, the need for injunctive relief, and the propriety of that relief on a balancing of the equities. Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Cantone Research, Inc., 427 N.J. Super. 45, 63 (App. Div. 2012). A court's decision on the matter is entrusted to its sound discretion, Horizon Health Ctr. v. Felicissimo, 135 N.J. 126, 137 (1994), and will be reviewable only for an abuse of that discretion on appeal, Sheppard v. Twp. of Frankford, 261 N.J. Super. 5, 9-10 (App. Div. 1992).

A-1676-18T1

With respect to the injunctive relief sought here, our custody statute reflects a public policy preference for arrangements that permit both parents full involvement in their children's upbringing through mutual participation in decision-making, and fosters the maintenance of attachments the children have made to both parents. Beck v. Beck, 86 N.J. 480, 485, 487 (1981). To that end, in a joint custody arrangement, the legal authority for making "major" decisions—that is, those affecting the "child's health, education, and general welfare," N.J.S.A. 9:2-4(a)—is shared by both parents.

Such decisions may include the choice of a child's school, Asch v. Asch, 164 N.J. Super. 499, 504-05 (App. Div. 1978); religious upbringing, Esposito v. Esposito, 41 N.J. 143, 146 (1963); or permanent relocation outside New Jersey, Bisbing v. Bisbing, 230 N.J. 309, 323 (2017). However, the children's primary custodial parent is afforded autonomy over their day-to-day affairs, not for purposes of excluding the parent of alternate residence, but to ensure the children's stability within the chosen custody arrangement. Pascale v. Pascale, 140 N.J. 583, 600 (1995).

Here, the judge observed at the outset that, while the parties' settlement agreement was silent as to the precise parenting arrangement it prescribed other than to assign plaintiff "primary custody" pending further agreement of the

parties or full consideration by the court, plaintiff had failed to introduce any evidence rebutting the presumption that the parties shared joint legal custody. Nonetheless, the judge recognized that plaintiff was clearly the children's primary caretaker and, as such, was entitled to autonomy regarding decision making over the children's day-to-day activities while she exercised physical custody free of interference from defendant. There was sufficient credible evidence in the record to support the judge's finding.

Defendant asserts the judge's decision inappropriately expanded plaintiff's "autonomy over the day-to-day activities of the children" to include week-long vacations hundreds of miles away and planned months in advance entitling plaintiff to "do whatever, and go wherever, she chooses during timeframes while she has physical custody of the children." According to defendant, the judge's decision narrowed the scope of "joint legal custody" to exclude defendant's participation in decisions related to the children's travel, a result defendant argues is contrary to public policy as espoused in Abbott v. Abbott, 560 U.S. 1, 9-15 (2010). We reject defendant's argument.

In Abbott, the Court addressed a situation in which a mother with primary physical custody relocated with the parties' minor child from Chile to the United States without the father's permission. Id. at 5-6. At issue was whether the

father's ne exeat right—a parent's right to consent prior to his or her child's removal from the country—under Chilean law violated a "right of custody" under the Hague Convention on the Civil Aspects of International Child Abduction,[1] so as to warrant the child's return to Chile.  Id. at 5.

The Court concluded it did not and compared the ne exeat remedy to rights of joint legal custody in the United States in the course of its reasoning.  Id. at 9-20.  But explicitly at issue was the noncustodial parent's "joint right to decide his [or her] child's country of residence . . . ."  Id. at 10 (emphasis added).  Here, in sharp contrast, the issue is stateside travel and metropolitan area day trips with the children.  The Abbott decision is not precedential or even applicable to the family dynamic in the matter under review.

B.    Compulsory Education Law.

Defendant next contends that plaintiff violated New Jersey's compulsory education law, which mandates regular school attendance:

> Every parent, guardian or other person having custody
> and control of a child between the ages of six and
> [sixteen] years shall cause such child regularly to attend
> the public schools of the district or a day school in
> which there is given instruction equivalent to that

---

[1]  The United States ratified the Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, 1343 U.N.T.S. 49 in 1988 and passed implementing legislation known as The International Child Abduction Remedies Act (ICARA), 22 U.S.C. §§ 9001 to 9011.

provided in the public schools for children of similar grades and attainments or to receive equivalent instruction elsewhere than at school.

[N.J.S.A. 18A:38-25].

The Kinnelon school district sent a letter to elementary school parents advising that an absentee rate of ten percent or higher, which would equate to missing more than eighteen days during one school year, would be deemed chronic absenteeism. In her reply certification, plaintiff calculated that one child missed an average of 5.3 days per year and the other child missed an average of 6.5 days per year since the divorce. Recognizing the importance of complying with the compulsory education law, the judge ordered that the children not miss any more days in a particular school year than allowed by the district. We discern no abuse of discretion.

C.    Abuse or Neglect.

Moreover, we disagree with defendant that plaintiff abused and neglected the children by taking them to Florida for a week-long vacation during the school year. Plaintiff certified that she obtained the children's schoolwork and homework from their teachers, thereby mitigating any harm from their absence. Our review of the record shows the children are performing well academically, and the school district has never raised a concern about their attendance record.

D.    Removal Statute.

Defendant next argues that plaintiff's brief out-of-state trips with the children violate our removal statute, which provides:

> When the Superior Court has jurisdiction over the custody and maintenance of the minor children of parents divorced, separated or living separate, and such children are natives of this State, or have resided five years within its limits, they shall not be removed out of its jurisdiction against their own consent, if of suitable age to signify the same, nor while under that age without the consent of both parents, unless the court, upon cause shown, shall otherwise order.

> [N.J.S.A. 9:2-2.]

Defendant argues that the statute applies whenever a parent takes a child outside the state for any length of time, and that either his consent or a court order is required authorizing such "removal." Again, we reject defendant's arguments.

As conceded by defendant, our courts have routinely applied this statute in the context of motions for permanent out-of-state relocation. In Bisbing, the Court observed that the statute does not have an impact upon a parent's constitutional right to travel, but merely affects his or her ability to permanently relocate with the child outside the State. 230 N.J. at 336.

Nothing in the record before us even remotely suggests that plaintiff intended to permanently remove the children from the State of New Jersey. Our

A-1676-18T1

courts also have made clear that "the term 'removal' as defined in N.J.S.A. 9:2-2 does not prohibit <u>temporary</u> departures from the jurisdiction for legitimate purposes . . . ." <u>McKinley v. Naters</u>, 419 N.J. Super. 205, 210 (Ch. Div. 2010) (emphasis added). Defendant's interpretation of the statute is mistaken. It does not require plaintiff to obtain his consent prior to her brief out-of-state vacations or day trips with the children.

    E.    <u>Interference With Custody</u>.

Defendant next argues that plaintiff's actions constituted criminal interference with custody. The statute provides:

> a. Custody of children. A person, including a parent, guardian or other lawful custodian, is guilty of interference with custody if he:
>
> > (1) Takes or detains a minor child with the purpose of concealing the minor child and thereby depriving the child's other parent of custody or parenting time with the minor child; or
> >
> >     . . . .
> >
> > (4) After the issuance of a temporary or final order specifying custody, joint custody rights or parenting time, takes, detains, entices or conceals a minor child from the other parent in violation of the custody or parenting time order.

Interference with custody is a crime of the second degree if the child is taken, detained, enticed or concealed: (i) outside the United States or (ii) for more than [twenty-four] hours. Otherwise, interference with custody is a crime of the third degree but the presumption of non-imprisonment . . . for a first offense of a crime of the third degree shall not apply.

. . . .

c. It is an affirmative defense to a prosecution under subsection a. of this section, which must be proved by clear and convincing evidence, that:

. . . .

(2) The actor reasonably believed that the taking or detaining of the minor child was consented to by the other parent, or by an authorized State agency . . . .

[N.J.S.A. 2C:13-4.]

Defendant contends the statute prohibits interference with both legal and physical custody, and asserts plaintiff's conduct, which deprived him of his legal authority to make decisions regarding the children's out-of-state travel, runs afoul of it. And, he claims that at least ten of plaintiff's fourteen trips have lasted more than twenty-four hours, constituting a second-degree crime, and that a trip to Florida in April 2017, additionally deprived him of parenting time on April 19 of that year. Defendant further asserts he was unaware the children had been

17

to Florida until he saw them on April 21 and noticed that they had spent time in the sun.

The motion judge correctly decided that plaintiff did not violate N.J.S.A. 2C:13-4(a)(1) because the vacations and day trips were not undertaken for the "purpose of conceal[ment]." Moreover, plaintiff did not contravene N.J.S.A. 2C:13-4(a)(4) either because the vacations did not violate the custody or parenting time provisions of the parties' PSA. In only one instance, defendant's parenting time was arguably delayed by two days because of plaintiff's vacation plans. In our view, this does not constitute the purposeful deprivation of custody and parenting time defined in N.J.S.A. 2C:13-4.

III.

Defendant next contends the judge abused her discretion in declining to order Dr. Hagovsky to prepare a report regarding defendant's visitation with the children. We reject defendant's argument.

The record shows that Dr. Hagovsky never performed a formal custody evaluation and was appointed as a supervisor rather than a custody expert. The motion judge correctly determined that defendant never moved for a modification of the current custody and parenting time arrangement. On

reconsideration, the judge reiterated defendant's continued lack of any request to revisit the arrangement and denied relief on that basis.

Defendant argues that the PSA does not require a showing of a substantial change of circumstances in order to modify the custody and parenting plan. The record does not support defendant's assertion that he spent over one hundred hours in visits with the children since 2013. Indeed, as we have noted, the record shows that since the divorce, defendant has only spent several hours per year visiting the children.

However, the PSA explicitly contemplated dual evaluations to be performed, both already completed or undertaken at the time the PSA was executed, supplemented only by "limited discovery," as a prerequisite for seeking modification of custody and parenting time. Moreover, the PSA contemplated that an application would be made within the reasonably foreseeable future, which did not occur here.

We note that a considerable amount of time has transpired since the PSA was entered. While defendant has certainly not abandoned his right under the PSA to move for modification under its parameters—that is, without the requirement that he first demonstrate a change in circumstances warranting a formal hearing, R.K. v. F.K., 437 N.J. Super. 58, 62 (App. Div. 2014)—the judge

19

correctly found he has made no such motion. Therefore, we discern no abuse of discretion by the judge in denying defendant's request to have Dr. Hagovsky prepare a report.

IV.

Defendant next challenges, in the context of both appeals, the requirement that he pay the retainer for the accountant, Mr. Krasnomowitz, who was to prepare an updated report to facilitate the long-delayed distribution of plaintiff's retirement account. As mentioned, paragraph 5.5(a) of the PSA was never carried out completely.

As stated in her moving certification, plaintiff was unable to reallocate any funds in her retirement account or take advantage of changes in market conditions due to defendant's lack of cooperation. Defendant, on the other hand, denied any blame, claiming it was he who repeatedly had to remind plaintiff to move forward with the process. He also stated that defendant's insistence on obtaining a QDRO was unnecessary for purposes of dividing the accounts once she had rolled one of them, a 401(k), over into a standard IRA. And, defendant objected to plaintiff's request to re-engage Mr. Krasnomowitz, who he believed had made a "glaring fundamental error" in his initial analysis.

The judge rejected defendant's argument as to the necessity of obtaining a QDRO, noting that the argument addressed only one of several accounts that remained subject to distribution. Moreover, it was clear from the voluminous emails plaintiff submitted that defendant's consistent rejection of her efforts to have him execute a QDRO was the reason for the delay in distribution of the accounts. Because a recalculation was necessary to determine the effect of market gains and losses on the marital portion of the remaining subject account in the five years since the finalized divorce, the judge concluded that defendant solely should pay Mr. Krasnomowitz's retainer to prepare an updated report.

The judge denied reconsideration on defendant's subsequent motion, reasoning that the PSA clearly stated that distribution of the subject account was to be made according to the value of the marital portion as of the filing of the complaint, "subject to any market gains or losses," and that the passage of time required revisiting the earlier calculation to account for the effect of any gains or losses in the interim. The judge acknowledged that defendant might disagree that a QDRO was necessary, and he was "free to make his own calculations," but noted he was "not a qualified accounting expert with the knowledge, skill, training, or experience required to give an ultimate report" on the matter. The judge stated that she would "continue to enforce the [agreement] as written,"

A-1676-18T1

and refused to consider the issue a <u>third time</u> on defendant's final motion for reconsideration.

Defendant relies upon his argument made before the motion judge and contends that a QDRO was not necessary for distribution of the account, asserting that the PSA had only contemplated use of a QDRO for purposes of distributing one of plaintiff's 401(k) accounts, a custodial one, that had since been rolled over into a non-custodial IRA.  He surmises the judge reached the contrary conclusion based on plaintiff's mischaracterization of the facts, leaving the judge with the impression that "certain . . . accounts still existed that in fact no longer existed," though he failed to specify to which accounts he is referring or offer any authority for his position as to the necessity of the QDRO.

As for Mr. Krasnomowitz, defendant contends the PSA is clear that this expert's engagement was already completed.  Plaintiff retained him to satisfy her burden of demonstrating which portion of her retirement accounts were immune from distribution, and the PSA makes no mention of his renewed involvement for that or any other purpose.  Defendant also contends the PSA does not contemplate any post-complaint contributions from plaintiff to the accounts identified or authorize any new valuation.

22

Defendant further asserts that he had calculated the "correct" marital portions himself and, though he acknowledged that he is not an expert, pointed to a certification from his financial advisor agreeing with his position, thereby dispensing with any need for Mr. Krasnomowitz to perform post-judgment forensic services. We disagree.

An asset is subject to equitable distribution upon divorce only insofar as it was acquired by either party during the course of the marital partnership, Barr v. Barr, 418 N.J. Super. 18, 33 (2011), and the burden of establishing that an asset or any portion thereof is immune from distribution falls on the party claiming its immunity, Pacifico v. Pacifico, 190 N.J. 258, 269 (2007). As pertinent here, to the extent a marital asset realizes any increase in value after the marriage has ended, the increase is immune from distribution only to the extent it derives from the post-dissolution efforts of one or the other spouse. Addesa v. Addesa, 392 N.J. Super. 58, 77 (App. Div. 2007).

Thus, active assets, whose values fluctuate according to the efforts or contributions of the owner, must ordinarily be distributed as of the date of the divorce complaint, lest one spouse inequitably share the benefits of the other's post-marital efforts. Valentino v. Valentino, 309 N.J. Super. 334, 338 (App. Div. 1998). On the other hand, a passive asset may be valued as of the date of

23

trial or distribution, because its fluctuations in value derive not from the efforts of either party but exclusively from market forces. Ibid. Under those circumstances, both parties may share in any change in value. Scavone v. Scavone, 243 N.J. Super. 134, 137-38 (App. Div. 1990).

Plaintiff's certification suggests that she was unable to reallocate any of the investments in her account, rendering any market appreciation or depreciation on the marital portion passive, and thereby subject to distribution. See Valentino, 309 N.J. Super. at 338. Mr. Krasnomowitz's report appears to express the relative marital and non-marital portions of the account not only in absolute figures, but in percentages pursuant to which any passive gains or losses could logically be allocated, regardless of the passage of time. Indeed, the PSA explicitly directed that the distributions be made according to the existing report, without any provision for subsequent recalculation.

However, other factors, such as any contributions made to the accounts subsequent to dissolution of the marital partnership, could alter the portion immune from distribution and undermine the integrity of the existing calculations. Plaintiff's certification suggests further contributions may have been made to the accounts subsequent to the parties' divorce, even if none of the

existing investments were reallocated, and defendant certified that he believed plaintiff continued to contribute to one of the accounts until June 2015.

Moreover, in an email in August 2015, defendant took plaintiff to task for failing to pay him his half of the marital portions of the account. He insisted that there was no need for a QDRO and stated that insofar as the existing calculations were "based on invested assets in accounts into which [she was] adding additional . . . contributions, the appreciation of the invested portion due [to him] need[ed] to be recalculated in light of all subsequent contributions and appreciation/depreciation value swings". Defendant requested a copy of plaintiff's statements, offering to perform the necessary calculations himself, though he suggested she could alternatively "spend another few thousand dollars having Dr. Every-Letter-in-the-Alphabet recalculate the amount" and thereby "waste as much of [her] money as possible on the sour fruit of [her] decision to divorce," an outcome he would happily accept.

We reject defendant's argument that the judge abused her discretion by ordering Mr. Krasnomowitz to update his report and that the judge improvidently ordered defendant to pay Mr. Krasnomowitz's retainer. The judge correctly enforced the terms of the PSA and aptly determined that defendant's recalcitrance led to the need for an updated forensic accounting report. The

judge's decision is based upon sufficient credible evidence in the record and does not constitute an abuse of discretion.

V.

Defendant next contends that the judge abused her discretion in denying his motion for a downward modification of his child support obligation. He claimed he lost his position as an in-house patent attorney and was only earning $30,000 per year in his own private practice. In light of defendant's alleged continued inability to find employment at a comparable level of compensation to his prior position, he claims the judge erred in not granting his motion. Again, we disagree.

Parents share an obligation to support their children, Strahan v. Strahan, 402 N.J. Super. 298, 306 (App. Div. 2008), not only to the extent of the children's basic needs, but to permit them to share in the benefit of their parents' financial success, Isaacson v. Isaacson, 348 N.J. Super. 560, 579-80 (App. Div. 2002). Child support awards are ordinarily calculated based on the parties' incomes pursuant to the guidelines provided in the rules. The awards may be supplemented, when appropriate, to the extent the parties' combined income exceeds a certain threshold, to ensure the award meets the children's reasonable needs in light of the family's standard of living during the marriage and the

children's best interests. Isaacson, 348 N.J. Super. at 580-81, 584. Defendant's support obligation here was agreed upon between the parties, ostensibly pursuant to this framework.

Nonetheless, courts retain the equitable power to review and modify a support award on a showing of a change in circumstances, Crews v. Crews, 164 N.J. 11, 24 (2000), such as an increase in need or a decrease in the obligor's income affecting his or her ability to afford the existing obligation, Schwartz v. Schwartz, 328 N.J. Super. 275, 282 (App. Div. 2000). The burden of establishing a prima facie case of such a change falls on the moving party. See id. at 282. Specifically, in the case of a decrease in income, the moving party may make the requisite showing by presenting evidence of diligent, but unsuccessful, efforts to find work at comparable compensation. The moving party may also show that he or she has sent out resumes, arranged for interviews, sought out placement firms, and carefully considered any offers of employment. Dorfman v. Dorfman, 315 N.J. Super. 511, 516-17 (App. Div. 1998).

On the other hand, if a party is self-employed, he or she is in the position to "present an unrealistic picture of his or her actual income than a W-2 earner," Larbig v. Larbig, 384 N.J. Super. 17, 23 (App. Div. 2006). Under these circumstances, our courts have recognized that "what constitutes a temporary

change in [his or her] income should be viewed more expansively" and invite somewhat greater scrutiny, Donnelly v. Donnelly, 405 N.J. Super. 117, 128-29 (App. Div. 2009) (quoting Larbig, 384 N.J. Super. at 23).

In any case, where a party is voluntarily unemployed or underemployed, the court, whether on an initial application for support or an application for modification, may impute income to that party at his or her prior earnings or other appropriate level of compensation. Golian v. Golian, 344 N.J. Super. 337, 341 (App. Div. 2001). A court's decision in that regard is entrusted to its sound discretion and will be afforded deference on appeal insofar as it is consistent with competent evidence in the record. Storey v. Storey, 373 N.J. Super. 464, 474-75 (App. Div. 2004). So, too, will its broader ultimate decision in setting or modifying a support award. Crews, 164 N.J. at 24.

Further, insofar as that decision was also the subject of a motion for reconsideration, in general, reconsideration of a prior order pursuant to Rule 4:49-2 is appropriate "only under [the] very narrow circumstances" where "(l) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or (2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence." Fusco v. Bd. of Educ. of Newark, 349 N.J. Super. 455, 462 (App. Div. 2002) (quoting

28

D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)). A court's decision on a motion for that relief also rests within its sound discretion. Casino Reinvestment Dev. Auth. v. Teller, 384 N.J. Super. 408, 413 (App. Div. 2006).

Here, the court noted on defendant's initial application that, although he had submitted nearly forty pages of data summarizing email messages related to his job search, he failed to include the substance of any of those messages and merely indicated the sender and subject line, many of which suggested the corresponding messages did not relate directly to job applications. As to the messages that appeared to be related to job applications, the judge had no way of determining whether any pertained to positions at comparable compensation to his prior employment or whether defendant had actually followed up on any of the applications.

The judge acknowledged defendant's evidence of job search alerts from legal recruiters, but noted it was unclear whether he had applied for any of the positions, and, to the extent he had applied for acting jobs as well, the judge did not consider them sufficient work for a highly experienced bilingual patent attorney with support obligations for two young children. Moreover, defendant's proofs indicated that he submitted applications for positions for which he was not qualified. Saliently, defendant refused to produce his tax

returns or pertinent records from his law firm to support his claim that he was only earning $30,000 per year. Therefore, the judge did not err by denying defendant's motion to modify child support without prejudice because defendant failed to make a prima facie case of changed circumstances.

VI.

Next, we turn to defendant's contention that the judge abused her discretion by awarding plaintiff counsel fees rather than granting his request to sanction her counsel on frivolous litigation grounds.

We review an award of counsel fees for abuse of discretion. Where the judge follows the law and "makes appropriate findings of fact, a fee award is accorded substantial deference and will be disturbed only in the clearest case of abuse of discretion." Yueh v. Yueh, 329 N.J. Super. 447, 466 (App. Div. 2000); see also Barr, 418 N.J. Super. at 46. An abuse of discretion "arises when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. Immigration & Naturalization Serv., 779 F.2d 2160, 1265 (7th Cir. 1985)); Barr, 418 N.J. Super. at 46.

Sanctions for frivolous litigation, including an award of attorney fees, are available both against an offending litigant pursuant to statute, N.J.S.A. 2A:15-59.1, and against an offending attorney or pro se litigant pursuant to Rule 1:4-8. The statute authorizes an award of fees and costs to the prevailing party in a civil action on a finding at any point in the proceedings that the nonprevailing party advanced a frivolous claim or defense—that is, one which "was commenced, used or continued in bad faith, solely for the purpose of harassment, delay or malicious injury," or one that the party knew or should have known "was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law." N.J.S.A. 2A:15-59.1(a)-(b).

Rule 1:4-8(b) requires that an attorney or pro se litigant be deemed to have certified in filing a pleading or motion that, to the best of his or her knowledge after reasonable inquiry, the pleading does not fall afoul of either of the two criteria for frivolous litigation enumerated in the statute and that any factual allegations or denials have sufficient support and will be duly withdrawn in the event discovery shows otherwise. Violations are punishable by sanction if the attorney or party fails to withdraw the offending pleading or motion within twenty-eight days of a conforming demand for withdrawal.

31

However, to avoid unduly limiting access to the judicial system, our courts will deem an assertion "frivolous" under either the statute or court rule only if "no rational argument can be advanced in its support, or it is not supported by any credible evidence, or it is completely untenable." United Hearts, L.L.C. v. Zahabian, 407 N.J. Super. 379, 389-90 (App. Div. 2009) (quoting First Atl. Fed. Credit Union v. Perez, 391 N.J. Super. 419, 432 (App. Div. 2007)). So long as the party or counsel has a good faith belief in the claim's merit, sanctions are unwarranted. Ibid. A court's ultimate decision in that regard is reviewable on appeal only for an abuse of discretion. Masone v. Levine, 382 N.J. Super. 181, 193 (App. Div. 2005).

Moreover, a Family Part judge may award counsel fees at his or her discretion subject to the provisions of Rule 4:42-9(a)(1). In determining the award, the court should consider:

> (1) the financial circumstances of the parties;
>
> (2) the ability of the parties to pay their own fees or to contribute to the fees of the other party;
>
> (3) the reasonableness and good faith of the positions advanced by the parties . . . ;
>
> (4) the extent of the fees incurred by both parties;
>
> (5) any fees previously awarded;

(6) the amount of fees previously paid to counsel by each party;

(7) the results obtained;

(8) the degree to which fees were incurred to enforce existing orders or to compel discovery; and

(9) any other factor bearing on the fairness of an award.

[R. 5:3-5(c).]

In particular, where one party pursues a position in bad faith, the court may award reasonable attorney's fees to the other irrespective of the parties' relative economic health, "because the purpose of the award is to protect the innocent party from unnecessary costs and to punish the guilty party." Yueh, 329 N.J. Super. at 461. A court's decision whether to award fees pursuant to this rule, as with sanctions for frivolous litigation, lies within its sound discretion, and must not be disturbed unless "so wide of the mark" as to constitute an abuse of that discretion. Chestone v. Chestone, 322 N.J. Super. 250, 258 (App. Div. 1999).

Here, both parties submitted the prerequisite withdrawal demand letters and later sought fees on frivolous litigation grounds, however, the judge's ultimate award to plaintiff relied instead on the broader authorization for fee recovery in the context of matrimonial litigation. Plaintiff first requested that

relief in respect of defendant's motion for the injunction against her out-of-state travel with the children without his prior consent, but the judge denied that request without prejudice, noting that "although defendant's motion [had] cite[d] largely irrelevant law," he had not made it in bad faith.

Our careful review of the record supports the judge's decision to award plaintiff counsel fees. The judge properly found defendant's initial round of motions and litigation, which resulted in the entry of the May 30, 2018 order, was filed in good faith. However, after his motions were denied, the judge found that the record was replete with defendant's continued litigation and relitigation of the same issues in bad faith. The judge did not award plaintiff fees pursuant to Rule 1:4-8 as argued by defendant, but pursuant to Rule 5:3-5(c). In her discretion, the judge appropriately did not award frivolous litigation sanctions. We discern no error or abuse of discretion.

To the extent we have not directly addressed the balance of the defendant's arguments, we find them to lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION